450 A.2d 720

### C. Craig RIFE, Appellant,

v.

### STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Dec. 16, 1981.

Filed Sept. 10, 1982.

---

Catherine M. Harper, Philadelphia, for appellant.

Peter J. Hoffman, Philadelphia, for appellee.

Before WICKERSHAM, BECK and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the Order of the Court of Common Pleas of Philadelphia County, per Calvin T. Wilson, Judge, granting appellee's, State Farm Mutual Insurance Co.'s, cross-motion for summary judgment. We affirm.

This case presents this Court with another opportunity to unravel and interpret the scope of Pennsylvania's No-Fault Insurance Act (40 P.S. § 1009.101 *et seq.*), and the seemingly myriad of (sometimes unusual) factual situations which have arisen in its application.

Instantly, as conceded by the appellant, C. Craig Rife, the facts are undisputed, the only stumbling block being the applicability of the law to the facts. On August 7, 1978, a few minutes after 8:00 p. m., Lt. Charles Schlernitzauer was in the VIP parking lot at Philadelphia International Airport issuing a ticket for an illegally parked vehicle. Before the officer had completed writing the ticket, appellant arrived, "began to scream and shout . . . and . . . repeated several times that you are not giving me no god damn ticket." (N.T. 8/16/78 at 1) This raucous behavior by the appellant escalated to the point where he began to strike the officer, "once in the face a couple [of] times, and then in the body." *Id.* at 2. Appellant also grabbed the ticket book and began to tear it. When the officer tried to retrieve the book, appellant struck him a couple of more times in the body. The officer reacted by drawing his blackjack, and, then, the officer "struck Rife twice up around the shoulder and the head area. He dropped the ticket book and pushed and struck [the officer] a couple more times, and he ran to his car, got in and locked the door." *Id.* at 3. The appellant pulled out from his parking space with the officer in pursuit—prior thereto, the officer had radioed for assistance. As appellant sought to leave the lot, an Officer Mongelli had to jump out of the way of the moving vehicle to avoid being struck. At this point, two shots were fired by Officer Mongelli at the left rear tire of appellant's vehicle to retard his movement. However, the appellant managed to elude the bullets, exited the lot, jumped a curb in the process and then made a right hand turn, going the wrong way, on to the entrance road to the airport.

The scenario continues with the appellant making a second right hand turn, jumping a curb and a traffic island and driving through a four-foot high chain link fence into a

parking area reserved for rental car companies. Because of the officer's call for assistance, Officer Almond was monitoring the progress of the chase and had stationed himself in an area where appellant was reported heading. After the appellant drove through the fence, Officer Almond saw the vehicle coming directly at him. The officer held his hands up in a manner directing the appellant to stop. However, the appellant failed to slow down. The officer responded by "pull[ing his] revolver and jump[ing] to the side to keep from being hit from the vehicle and fired three shots in the right front window." *Id.* at 24. Thereafter, the vehicle ran into a barricade and appellant's attempt to drive over the barrier proved futile. At this point, Lt. Schlernitzauer arrived on the scene and had to resort to breaking the windshield of appellant's vehicle to get him out. When the police noticed that appellant had sustained a bullet wound to his right arm, he was transported to the hospital for treatment.[1]

Appellant, as a result of injuries incurred in the course of operating the vehicle, filed a claim with the appellee insurance company seeking recoupment of the monies expended for "procuring medical treatment for his injuries." Appellee refused to honor the claim. In response thereto, appellant filed a Complaint in Assumpsit, in which he alleged, *inter alia:*

"5. On the 7th day of August, 1978, plaintiff[-appellant] was lawfully operating his wife's motor vehicle[, which was insured by the appellee,] with her permission when he was involved in an accident which resulted in injuries being sustained by plaintiff which injuries required medical, surgical and hospital care.

\* \* \* \* \* \*

7. Plaintiff has complied with all conditions and precedents required to be complied by him according to the terms of said policy [issued by the appellee].

---

1. Appellant was charged with aggravated assault, recklessly endangering another person and resisting arrest. He was found guilty of simple assault on January 4, 1979, before the Hon. Angelo A. Guarino.

8. Defendant [-appellee] has refused to pay said medical bills or any part thereof and continues to refuse to pay said medical bills or any part thereof.

*    *    *    *    *    *

WHEREFORE, plaintiff demand[ed] judgment against the defendant in an amount less than $10,000.00." (*See* Appellant's "Complaint in Assumpsit," Points 5, 7 & 8)

The appellee's, in its Answer and New Matter, responded that "[t]he injuries received by [appellant] . . . [were] not the result of a motor vehicle accident compensible under either the No-Fault Act or the policy in question." (*See* Appellee's "Answer" and "New Matter," Points 5 & 12) Thereafter, appellant filed a Motion for Summary Judgment, in which he alleged that his injuries were "not excluded from coverage by the terms of the insurance policy." Appellee, likewise, submitted a similar motion, asserting that appellant's injuries were not "accidentally sustained" and that said injuries did not "arise out of the use of a motor vehicle." On June 3, 1980, the lower court denied appellant's Motion, but on the same date judgment was entered in favor of appellee on its cross-motion.

■ On appeal, the issue posited is whether, in accordance with the dictates of Pennsylvania's No-Fault Act, the injuries sustained by the appellant are compensable under the terms of the insurance policy issued by the appellee? We think not.

Under the insurance policy in question, the "No-Fault Coverage" section provides that:

"We will pay in accordance with the No-Fault Act for bodily injury to an insured, caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle.

1. Medical expenses: Reasonable charges incurred for necessary products, services and accomodations needed for:

a) professional medical, dental, hospital and nursing services for diagnosis, care and recovery. It includes

remedial religious treatment by a recognized method of healing.

b) emergency health services provided by a person accredited by an emergency health system.

c) vocational rehabilitation. These are services by a state approved facility needed to reduce disability and to restore the physical, psychological, social and vocational functioning of an insured ..."

Appellant urges that when the preceding is read in conjunction with Section 1009.201 of the No-fault Act, i.e., that "any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this Act," it is "clear" that his injuries are compensable under the letter and spirit of the No-fault Act. We take umbrage, given the particular facts of this case, with such a liberal interpretation of the Legislature's intention in promulgating the statute in question. In fact, to sanction the claim of the appellant in the instant case would be to affix the imprimatur of this Court to the manipulation of a statute that was not, at least from our reading of the statutory and case law on the subject, contemplated by the legislators.

■ Our examination begins with noting that the Legislature's purpose in enacting the No-fault Act was to provide, "... a State-wide system of prompt and adequate basic loss benefits for motor vehicle accident victims ...." 40 P.S. § 1009.102(b) (Supp.1982–83). In so doing, the elected officials sought, in part, "the maximum feasible restoration of all individuals *injured* ... in motor vehicle accidents on the Commonwealth highways ...." (Emphasis added) *Id.* at § 1009.102(a)(3). As is germane to this case, "victim" is defined as: "an individual who suffers injury arising out of the maintenance or use of an automobile." In the same definitional section of the No-fault Act, the term "injury" is held to mean: "accidentally sustained bodily harm to an individual and that individual's illness, disease, or death resulting therefrom." *Id.* at § 1009.103. Based on the aforesaid, we take issue with the contention by the appellant

that his injury (bullet wound) arose "out of the maintenance or use of an automobile." Also, we find appellant's entitlement to the no-fault benefits under the insurance policy is precluded, since his injury was not sustained *accidentally*. In making this determination, we must be cognizant that construction of the No-fault Act must be co-extensive with both law and logic, while at the same time eschewing the absurd or unreasonable result. *See Commonwealth v. Allied Building Credits, Inc.*, 385 Pa. 370, 380, 123 A.2d 686, 692 (1956); *see also Commonwealth v. Graeff*, 296 Pa.Super. 480, 442 A.2d 1153 (1982); *Turner v. May Corp.*, 285 Pa.Super. 241, 427 A.2d 203 (1981). In deciding if appellant's injury "arose out of the maintenance or use of the motor vehicle," we look to *Day v. State Farm Mutual Insurance Co.*, 261 Pa.Super. 216, 396 A.2d 3 (1979), which, albeit not on all fours with the case at bar, is instructive.

In *Day,* appellee was involved in a collision with a truck operated by a Mr. Williams. After the accident, both drivers alighted from their vehicles and engaged in an argument in which appellee sustained an injury, a broken ankle. Appellee, unable to collect against Williams' insurance company, brought suit against his carrier, State Farm Mutual Insurance Co., appellant. This Court, in reversing the trial judge's decision to vacate an arbitrator's award in favor of the appellant, did so on the following grounds:

"The real issue in this case involves the instrumentality used to cause the injury, not whether it was intentionally or accidentally inflicted. Automobile insurance, including uninsured motorist provisions, are designed to compensate victims for vehicle-caused injuries. There must be some connection between the harm done and the insured vehicle. See *Wheeler et al. v. London Guarantee & Accident Co.,* 292 Pa. 156, 140 A. 855 (1928), *Ferry v. Protective Indemnity Company of New York,* 155 Pa.Super. 266, 38 A.2d 493 (1944), *Presbyterian University of Pennsylvania Medical Center v. Keystone Insurance Co. and Willie Bass,* 251 Pa.Super. 71, 380 A.2d 381 (1977). The vehicle itself is covered by the automobile policy, and an individual is

covered only by nature of his function as the driver of that vehicle. The intent of the driver becomes relevant only after a determination is made that *the injury complained of was caused by the vehicle. This is, in fact, the meaning of the language 'arising out of the ownership, maintenance or use of such uninsured motor vehicle,'* contained in the State Farm policy.

In the instant case, Day's broken ankle was caused by Williams knocking him down with his fists, not with his truck. In point of fact, no injury was caused by the collision of the two vehicles in question. Williams was clearly not behaving as a motorist at the time of his assault on Day."

(Emphasis added) *Id.* 261 Pa.Super. at 219, 396 A.2d at 5.

Instantly, as in *Day*, the insurance policy contains language which limits recovery for bodily injury "caused by accident resulting from the maintenance or use of a motor vehicle," with the additional proviso that said payment will be made "in accordance with the No-Fault Act." Here, appellant's injury was caused by a shot fired by Officer Almond *as he was attempting to evade apprehension for the commission of a crime.* Thus, as in *Day,* appellant sustained an injury by a force external to any vehicle involved in a collision. Consequently, "[t]he injury sustained was simply not within the scope and terms of th[e] policy." *Day v. State Farm Mutual Insurance Co., supra,* 261 Pa.Super. at 219, 396 A.2d at 5. *Accord Erie Insurance Exchange v. Eisenhuth,* 305 Pa.Super. ——, 451 A.2d 1024 (10/15/82) (A vehicular passenger was shot by a policeman during pursuit of the vehicle's driver. Applying the reasoning of *Day v. State Farm Mutual Insurance Co., supra,* the court concluded that the passenger's presence in the vehicle was not connected causally to his injuries. Therefore, he was not entitled to recover no-fault benefits); *Nationwide Mutual Insurance Co. v. Knight,* 34 N.C.App. 96, 237 S.E.2d 341 (1977). As conceded by the appellant, "the facts presented for discussion are . . . unusual." If we were to interpret the insured's policy to allow recoupment of his medical expenses,

we would be subverting the purpose for which the No-Fault Act was passed, i.e., to provide prompt and adequate compensation to victims who "accidentally" sustain bodily harm on the Commonwealth's highways.

Appellant cites to us *Howe v. Harleysville Insurance Co.,* 7 D. & C.3d 214 (Luzerne County, 1978), in support of his contention that his injuries are compensable under the No-Fault Act. In *Howe,* the plaintiff was a passenger in an insured vehicle when he was shot by a hunter, who had fired at a deer and missed his mark. The errant bullet struck the claimant while he was seated in the moving vehicle. The court decided that the injury came within the ambit of the No-Fault Act; however, in so doing, the court was careful to note the public policy aspect of this kind of case:

> "Certainly to the *unsuspecting passenger,* it makes no difference if his injuries are caused by a collision with another vehicle, a falling tree, a stationery pole, or *a misfired bullet . . .* damages and loss are the same. We see nothing in the [No-Fault] Act which supports or requires the conclusion that the legislature desired to restrict application of the No-Fault Act to a particular type of accident or that causation is a statutory prerequisite to recovery." (Emphasis added) *Id.* at 217–218.

We find *Howe* distinguishable, for in the case *sub judice* we are not dealing with either an "unsuspecting" occupant of a vehicle or "a misfired bullet." Rather, appellant's actions initiated and escalated the scenario of facts that culminated in his being shot. As a corollary thereto, it cannot be gainsaid that "[t]he policeman who fired the damaging shot did so willfully, intentionally and deliberately after having witnessed [appellant's] attempt to run over [said policeman] and his fellow officers." (Lower Court Opinion at 5)

Additionally, appellant proffers the rulings in *Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 326 A.2d 346 (1974) and *Wetzel v. Westinghouse Electric Corporation,* 258 Pa.Super. 500, 393 A.2d 470 (1978) to buttress his averment that the courts of this Commonwealth have permitted recovery under a policy of insurance even where the insured was

injured during the commission of a criminal act. In both *Mohn* and *Wetzel,* the *innocent* beneficiaries sought to collect the proceeds from the death of a family member under the policy of insurance, whereas here the perpetrator of the crime that set in motion an erratic sequence of events that culminated, directly, in the injury now seeks reimbursement. Surely, it cannot be said, in all candidness, that appellant was "behaving as a motorist at the time of his assault" by the authorities. *See generally Day v. State Farm Mutual Insurance Co., supra.* Thus, as stated in *Mohn,* examining the "injury . . . from the viewpoint of the insured," we find no reason to take odds with the trial court's determination that "[appellant's] injury did not arise out of the use of his automobile nor was the injury accidentally sustained." (Lower Court Opinion at 5) To hold otherwise, *under the particular facts of this case,* would do violence not only to the logical interpretation of the No-Fault Act, but would be inconsistent with jurisprudentially sound decision-making by this Court.

Order affirmed.

BECK, J., concurs in the result.