# Lias v. Erie Insurance Group

*George R. Kepple,* for plaintiffs.
*Robert E. Pryde,* for defendant.

HOUSE, *P.J.,* November 16, 1982—The case at bar requires us to determine whether or not the No-fault Act applies so as to entitle plaintiff to benefits as a result of the drowning deaths of his parents. The factual background has been stipulated by the parties and is summarized in the following:

## FINDINGS OF FACT

1. Wilson L. Robinson, date of birth June 17, 1941, and Betty Ellen Robinson, date of birth June 6, 1946, were husband and wife and residents of Brady's Bend Township, Armstrong County, Pa. They were the parents of two children: Thomas Stuart Robinson, date of birth March 22, 1964, and Amy Lee Robinson, date of birth October 10, 1975.

2. William Robinson was employed by Daman Industries at R. D. 1, East Brady, Pa., with a weekly salary of approximately $340.

3. Ellen Robinson was not employed.

4. On August 14, 1980, at or about 10:30 pm, Wilson L. Robinson, Betty Ellen Robinson and Amy Robinson were traveling on a public highway in their vehicle, a 1970 Ford Pickup Truck.

5. While decedents were traveling in the truck as aforesaid, the vehicle encountered and came into contact with water flooding conditions upon the highway surface and due to the depth and flow of the water, as well as a disabled vehicle in their path, they were unable either to proceed further or to retreat and were trapped in the truck.

6. The water which had obstructed and prevented further operation of the vehicle rose to a point where the occupants were compelled to climb to the hood and/or roof of the vehicle.

7. The water ultimately rose to the point where decedents were swept away and drowned approximately one and one-half hours after the vehicle became immobilized.

8. Plaintiffs, Thomas D. Lias and Betty Mae Lias, are the duly appointed guardians of Thomas S. Robinson, a minor. Said appointment was made by the Court of Common Pleas of Armstrong County on September 3, 1980.

9. Defendant, Erie Insurance Group, is a corporation licensed to transact insurance and pursuant thereto conducts such business within the Commonwealth of Pennsylvania with offices at 144 East Sixth Street, P. O. Box 1699, Erie, Pa.

10. Plaintiffs were appointed guardians of said minor because of the death of his father, Wilson L. Robinson, and his mother, Betty Ellen Robinson, on August 4, 1980.

11. At all times material hereto the said Thomas S. Robinson, a minor, resided with and was a member of the household of his natural parents, Wilson L. Robinson and Betty Ellen Robinson.

12. At all times material hereto the said Wilson L. Robinson and Betty Ellen Robinson were insured by Erie Insurance Group which provided security for the said Thomas S. Robinson as a member of his parents' household in accordance with the provisions of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.101, et seq.

13. The said policy of insurance providing such security was in full force and effect on August 14, 1980.

14. At the time of the death of Wilson L. Robinson and Betty Ellen Robinson, the said Thomas S. Robinson, a minor was dependent upon each of them for support.

15. Following the accident hereinbefore referred to, the said Thomas D. Lias and Betty Mae Lias, guardians of Thomas S. Robinson, a minor, gave timely and reasonable notice to the defendant and did provide the defendant with the amount of their losses and expenses and did complete an appropriate No-fault benefit form.

## DISCUSSION

This case requires the court to consider the applicability of the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. 1009.101 et seq. (hereinafter the act) to the occurrence which took the lives of plaintiffs' decedents. Plaintiffs' decedents were traveling on a highway of this county when their pickup truck was immobilized and, ultimately, carried away by flash flood waters and plaintiffs' decedents were drowned.

Plaintiff, by his guardians, filed a claim for no-fault benefits with defendant and the claim was denied. Accordingly, payments have not been made to plaintiff. The parties have stipulated to certain facts which they agree shall govern resolution of the issues presented.

The overriding question to be answered is whether the act applies to this case at all. The act provides in section 103 that losses covered by this statute are those

. . . resulting from injury arising out of the maintenance or use of a motor vehicle . . . as a vehicle.

It is the position of plaintiff that decedents were occupying a vehicle and were operating the same as a vehicle when it first encountered the hazard. The hazard made further operation impossible and ultimately caused decedents to drown. Plaintiff thus argues that the mere passage of time and the attempted use of the vehicle as a refuge after it could be operated no further do not take the case out of the application of the No-fault Act.

On the other hand, defendant insurer contends that at the time of injury (drowning) the truck had long since ceased to be used as a motor vehicle. Defendant argues that the use of the truck as a refuge

after it became immobilized takes the case out of the range of situations covered by the No-fault Act and relieves it of any obligation to pay benefits to survivors.

The research done by respective counsel for the parties and research done by the court has failed to turn up any appellate or trial court decisions which squarely decide the issue here presented. This is not surprising considering the relative newness of the act as well as the fact that each case must necessarily turn to some extent upon its own particular fact situation.

Thus it has been held by the Superior Court that a fatal oven explosion in a parked motor home is not encompassed by the act because the home was not then being used as a vehicle. Crusco v. I.N.A. 292 Pa. Super. 293, 437 A.2d 52 (1981)

Likewise the Superior Court held that an injury occurring while the motorist was removing a boat from the roof of his stopped or parked car was not within the ambit of the act because, again, the car was not then being used as a vehicle. Dull v. Employer's Mutual Casualty Company_____ Pa. Super. _____, 410 A.2d 688 (1980)

Similarly, the Northampton County court has held that a person who receives an electric shock from a parked van used as a lunch wagon which is plugged into a household electrical circuit is not entitled to no-fault benefits because the van was not then being used as a vehicle. Wagner v. Nationwide Insurance Co., 14 D.&C. 3d 525 (1980)

However, an apparently anomalous result was reached by the Lehigh County court in Ash v. Com Realty Co., 4 D.&C. 3d 418 (1978). In that case a motorist was stopped at a traffic signal when debris falling from a building injured her. The court held that the injury did not arise out of the use or mainte-

nance of a motor vehicle. A close reading of Ash, however, reveals that it was *not* a suit brought under the act but rather was a suit brought against the building owner and a contractor wherein it was contended by the defendants that the No-fault Act was applicable and thus barred plaintiff's claim against them. The Ash court considered the legislative intent and concluded that: "The purpose of this legislation was to eliminate tort liability in order to keep insurance rates for motorists at a minimum. A tortfeasor who is not a motorist would seem to be outside the legislative plan. It seems apparent also that the legislature intended to provide prompt and adequate benefits for motor vehicle accident victims."

To the extent that Ash (supra) holds that a non-motorist tortfeasor is not contemplated by the legislative plan, it may be defensible. However, the finding that the motorist's injury did not arise out of use or maintenance of a motor vehicle is not so readily defensible as we shall shortly attempt to demonstrate.

In Howe v. Harleysville Insurance Companies, 7 D.&C. 3d 214 (1978) the Luzerne County court had before it a case involving a passenger in a vehicle who was injured in the leg by a gunshot fired by a nearby hunter. In holding that the injured party was entitled to benefits and that the No-fault Act thus was applicable, the Howe court construed the various definitions contined in the No-fault Act as clearly encompassing the wounded passenger. We are persuaded that Howe (supra) is a proper interpretation of the act and that Ash (supra) reached an arguably incorrect result.

As in Howe (supra), the instant case requires us to consider whether decedents were "victims" within the meaning of the No-fault Act and whether

the "injury" arose out of the "maintenance or use of a motor vehicle . . . as a vehicle."

Since our Supreme Court* has interpreted the words "arising out of the use of" as encompassing not only direct, proximate causes of injury but injury in any way causally connected with the use of a vehicle, it follows that the key factor is the use (or occupancy) of a vehicle at the time injury occurs. The source of the injury is of little or no consequence and will bar the claim, if ever, only where the injury would have occurred regardless of the use or occupancy of the vehicle or where the injury was not accidental.

In the case at bar, the truck was being used by decedents as a vehicle to travel along a public highway when the vehicle encountered a flash flood which engulfed it and carried it and its human freight to destruction.

Defendant's contention that under the facts the truck ceased being used as a vehicle long before the actual injury would be amusing if the case were not so tragic. Indeed, the act does not require a vehicle to be in motion in order to bring an injury within its operation. The act specifically includes injuries occurring while occupying, entering into or alighting from a vehicle.

Certainly the victims in the case at bar were "occupying" the vehicle throughout its movement as well as during its subsequent involuntary immobilization. They did not cease to "occupy" the vehicle when rising water compelled it to stop and compelled them to climb to the hood and/or roof in order to survive. And clearly, the passage of the 90 minutes which it took for this grim drama to reach its

---

*Manufacturer's Cas. Ins. Co. v. Goodville Mut. Cas. Co. 403 Pa. 603, 170 A.2d 571 (1961).

dismal conclusion does not operate to relieve defendant of liability. It takes no great imagination to conceive of numerous situations where compensable injury may occur while occupying or alighting from a vehicle which has not been in motion for seconds, minutes, hours or even days. Even this defendant would concede liability if this truck had encountered a highway washout and had been instantaneously submerged and swept away. It would be a distinction without a difference to hold that a washout or washaway which occurs *after* the vehicle has ceased movement but while it is still occupied, albeit involuntarily, is not a covered risk under No-fault. Under defendant's theory, frozen water in the form of an avalanche which buried a vehicle would be a covered risk only if instant death or injury occurred. As defendant would have it, a motorist whose vehicle is buried in an avalanche but who merely slowly suffocated or froze to death (either in or out of the vehicle) would not be entitled to the benefits of the act.

Defendant points to the recent decision in Rife v. State Farm Mutual Auto Insurance Co., 304 Pa. Super. Ct. 359, 450 A.2d 720 (1982) in support of its position in the case before us. In Rife (supra), the claimant was asserting his entitlement to medical benefits under No-fault where his injuries resulted from efforts of police to apprehend him and while he was using his auto in an attempt to elude and/or escape from the police. The Superior Court panel, after carefully detailing the bizarre facts of the case, concluded that Rife was not "injured" through the "use of maintenance of a motor vehicle" nor was his injury "accidentally" caused and, thus, found him ineligible for No-fault benefits.

A close reading in Rife (supra) positively convinces that, in the circumstances of the case at bar,

the Superior Court would hold that the victims were, indeed, "injured" in the use or maintenance of a motor vehicle and that such injury was caused by "accident." In the case at bar, there exists "some connection between the harm done and the insured vehicle" that was absent in Rife (supra) and in Day v. State Farm Mutual Insurance Co., 261 Pa. Super. 216, 396 A.2d 3 (1979).

Interestingly, the Rife (supra) court discusses the case of Howe v. Harleysville Insurance Co. (supra) and tacitly approves its holding while distinguishing it from Rife (supra). This serves to strengthen our view that the case at bar falls well within the parameters of the No-fault Act.

We hold plaintiffs entitled to the benefits of No-fault in the circumstances of this case despite defendant insurer's plea that we will make bad law if we decide this "hard and tragic" case against it.

The case is tragic but it is not hard. The risks and hazards encountered by plaintiff's decedents were precisely those which the legislature intended to address in the No-fault Act.

The next issue to be determined is what benefit is plaintiff entitled to under the act. Plaintiff claims that he is entitled to the following categories of recovery under the basic loss provisions of the act, as defined in section 103 of the Act:

a. Allowable expenses — "reasonable charges incurred for, or the reasonable value of . . . (D) expenses directly related to the funeral . . . of a deceased victim, not to exceed one thousand five hundred dollars ($1500)."

b. Work loss — "loss of gross income of a victim, as calculated pursuant to the provisions of section 205 of this act."

c. Survivor's loss — "(A) loss of income of a deceased victim which would probably have been con-

tributed to a survivor or survivors, if such victim had not sustained the fatal injury."

The issue of entitlement to the "allowable expenses" portion of plaintiff's claim does not appear to be contested by defendant. It is clear to this court that if plaintiff has reasonably proved his expenses in that portion of the claim he filed with defendant he is entitled to those losses up to the statutory maximum.

We do not have the amount claimed under the "allowable expense" category before us in this proceeding. All we can say now is that plaintiff is entitled to recover the expenses claimed if they are directly related to the funeral, burial, cremation or other form of disposition of the remains of a deceased victim, not to exceed $1500. We will require further hearings to determine the exact amount of plaintiff's recovey.

Also, in Heffner v. Allstate Insurance Co. and Pontius v. United States Fidelity and Guaranty Co. (consolidated on appeal), 491 Pa. 447, 421 A.2d 629 (1980), the Supreme Court addressed the issue of whether a survivor could recover both work loss and survivor's loss benefits. In that case, the court held that notwithstanding an apparent dichotomy in the statute between benefits accruing on account of deceased victims as opposed to living victims, both types of recovery are permitted in the same case. The court reasoned that if the legislature had intended to create a dichotomy between victims and deceased victims they would have done so in a more demonstrative manner.

However, the amount of the work loss recovery must be set off from the survivor's recovery under Heffner and Pontius (supra). Therefore, if plaintiff has reasonably proved his loss under any of the

three categories he is entitled to recover those losses up to the statutory maximum.

The next issue is whether benefits may be recovered for both parents. Defendant argues that plaintiff is not entitled to survivor's loss benefits for his mother because she was not working and she was not providing any financial support for the child. However, in Daniels v. State Farm Mutual Automobile Insurance Co., 283 Pa. Super. 336, 423 A.2d 1284 (1980), a minor who received no support from his father was entitled to receive survivor's loss benefits. Whether a parent provides actual support is not a factor in making the determination of entitlement to survivor's loss benefits. The court held in Daniels (supra) that a minor child, as a matter of law, is dependent upon his parents under the act.

However, we can not determine the amount to be paid to plaintiff based upon the case as it now stands. Plaintiff has simply alleged in his complaint and brief that he is entitled to the maximum benefits. We must, and will, set down a hearing to determine the amount of plaintiff's recovery.

However, we can consider plaintiff's argument for stacking of coverages in this opinion. Plaintiff agrees that since defendant's potential liability is determined under the Act it makes no difference to defendant whether one or two motor vehicles is insured. The argument continues that since plaintiff's decedents paid for two coverages they are entitled to two recoveries. However, if we were to accept plaintiff's argument we would do violence to the purpose of the act. Section 102(b) of the act provides that

. . . the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident vic-

tims and the survivors of deceased victims. (emphasis added.)

The legislature has specifically provided for ceilings on recovery and if we were to accept this argument insurance premiums would certainly have to be increased. And also, we agree with the Federal court in Kirsh v. Nationwide Insurance Co., 532 F. Supp. 766 (W.D. Pa. 1982), where they stated that

The language of the legislative findings and purposes for the No-fault Act, together with the fact that the legislature specifically included ceilings on recovery, leads this court to the conclusion that stacking is not permitted under the Pennsylvania No-Fault Act.

The final issue to be determined in this case is whether plaintiff is entitled to statutory interest from the date the claim was filed and attorney's fees. Defendant argues that neither of these items is recoverable under the act because defendant exercised good faith in not paying the claim.

However, the Supreme Court found in Hayes v. Erie Insurance Exchange, 493 Pa. 150, 425 A.2d 419 (1981), that good faith and reasonableness are not defenses to a claim for statutory interest under the act. Section 106 of the Act provides that an interest rate of 18 percent per annum is recoverable by claimants on payments that are overdue by 30 or more days. The Hayes court made it clear that even though the insurer exercised good faith and reasonableness in not paying the claim, if the insurer loses its argument in court the claimant is entitled to statutory interest on the sums determined to be due for the period commencing 30 days after the receipt of the claim by the insurer.

However, under section 107 good faith and reasonableness are defenses to the claim for attorney's fees. Hayes (supra). Since it appears that defendant

has raised a novel question of law relating to the use or maintenance of a motor vehicle we find that the failure to pay the claim was in good faith and plaintiff may not recover attorney's fees under the act. Accordingly, we enter the following conclusions of law and order of court.

## CONCLUSIONS OF LAW

1. Plaintiff's decedents died of injuries arising out of the maintenance and use of a motor vehicle.

2. The Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.101 et seq. applies to this case.

3. Plaintiff is entitled to the following categories of recovery in amounts to be determined, either by agreement or after further hearing:

a. Allowable expense — funeral expenses for all three decedents.

b. Survivor's loss benefits for both parents.

c. Work-loss benefits for plaintiff's father.

4. Plaintiff is entitled to interest on the amounts claimed and reasonably proven at the rate of 18 percent per annum from 30 days after the filing of the claim until the claim is paid by defendant.

## ORDER OF COURT

And now, November 16, 1982, upon consideration of the pleadings and briefs of the parties, it is hereby ordered, adjudged and decreed that judgment be entered on behalf of plaintiff and against defendant on the issue of defendant's liability under No-fault Act. The matter of damages shall be resolved by agreement of the parties or, failing that, by trial limited to issue of damages.

HOUSE, *P.J.*, May 25, 1983—Before the court are plaintiffs' and defendant's exceptions to the prior opinion of this court in the above titled matter. This case involves the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq. The act presents a complicated procedure for the recovery of losses suffered as a result of motor vehicle accidents. The courts of this Commonwealth have been struggling to understand and apply the act since its adoption and in an attempt to do likewise this court issued an opinion in this case.

No evidence was taken in this case because the parties entered into a stipulation of facts that rendered a hearing unnecessary. The stipulation of facts indicated that on August 14, 1980 plaintiffs' decedents* were traveling along State Route 68 in northern Armstrong County in their pickup truck. They encountered high water on a bridge due to a flash flood. Their progress was halted on the bridge due to the way being blocked by another vehicle that had become immobilized in the flood. In an unsuccessful attempt to avoid immersion in the rising water they climbed upon the hood and/or roof of the truck. Shortly thereafter, they and the vehicle were swept away and they drowned.

Plaintiff is the son of two of decedents and the brother of the third decedent. He timely filed a claim for no-fault benefits with defendant and defendant denied the claim. Defendant argues now, as it did before, that the act does not apply to this case at all because plaintiffs' losses did not arise out of the maintenance or use of a motor vehicle as a vehi-

---

* We should note that the father's name was incorrectly stated in Findings of Fact number 2. His name was Wilson Robinson.

cle. Defendant's argument is that at some point in time between decedents' stopping on the bridge and their ultimate demise the truck ceased to be used as a motor vehicle within the meaning of the act.

A necessary element of our decision on the merits of this case was the finding that the decedents' truck was incapacitated by the rising water, thereby rendering it impossible for the decedents to extricate themselves from the peril. The stipulated facts did not specifically state that it was impossible for the decedents to drive their truck away from the rising water. However, we inferred that such was the case in the prior opinion.

Defendant now argues that this was an improper inference. The basis of this argument is that there is nothing in the evidence to support the proposition that decedents knew that the area in which they were halted was subject to life threatening floods and that therefore it is plausible that they intended to remain in the peril and not drive out of the flood.

However, it is a matter of common knowledge that any flood is potentially dangerous. It is a common-sense notion that one's life, loved ones and property are simply more likely to avoid injury out of a flood than in a flood. It takes no special knowledge of the area to know this and the inference that the truck became disabled when decedents entered the flood is simply much more likely than the proposition advanced by defendant. Accordingly, it was not error for the court to find that decedents were using the truck as a motor vehicle when it became immobilized by the flood.

Moreover, as we pointed out in the prior opinion, it is clear that decedents were "occupying" the truck until the very moment of their demise. Occupation of the vehicle is specifically included in the

list of activities that are subject to coverage under the act.

Defendant's next argument is that there was an insufficient causal relationship between the factor that caused the loss and the use of the motor vehicle. In Erie Insurance Exchange v. Eisenhuth, Pa. Super., 451 A.2d 1024 (1982) and Schweitzer v. Aetna Life and Casualty, 306 Pa. Super. 300, 452 A.2d 735 (1982), the Superior Court affirmed the so-called "but-for" test of causation with a slight modification. That modification is that the factor that caused the loss must be within the foreseeably identifiable risks that are inherent in the normal use, maintenance and operation of a motor vehicle.

This is not a strict "but-for" standard. In the above-cited cases the intentional actions of a third person were the immediate and actual causes of the injuries. Strictly speaking, but for the use of a motor vehicle plaintiffs would not have been in the location where the injury occurred. However, when a third party intervenes in a way that bears no relation at all to risks inherent in the operation of a motor vehicle the courts have denied recovery. This is now the settled rule in Pennsylvania and in Eisenhuth (supra) the Superior Court rejected the analysis of the Common Pleas Court in Howe v. Harleysville Insurance Co., 7 D.&C. 3d 214 (1978), wherein the court held that a hunter accidentally shot while riding in a motor vehicle was the victim of a motor vehicle accident.

In the case at bar, there is no assertion that a third person intervened to cause the harm. Defendant's argument is that the flood was not within the risks inherent in operating a motor vehicle. However, this argument is without merit. A flood is merely one of a number of natural dangers that one might encounter while driving a motor vehicle. A person might

encounter a flood, rockslide, fallen tree or other natural obstacle. It is the intentional conduct of a third person that the courts have found to be beyond the risks foreseeable in the operation of a motor vehicle. We disagree with defendant and conclude that a flood is certainly a foreseeable risk inherent in operating a motor vehicle.

It is clear that from the time decedents drove into the flood until they were swept away that a chain of events unbroken by the intervening actions of a third party led up to the decedents' demise. The act applies to this case and defendant's exceptions are dismissed as being without merit.

Plaintiff also excepts to our decision in that we did not award survivor's loss and work loss recovery for the loss he suffered arising from the death of his sister. However, plaintiff neither pleaded nor attempted to prove entitlement to such recovery prior to the decision in this case. It is apparent that subsequent to the filing of our original opinion in this case, two decisions of the Superior Court were reported that give rise to plaintiff's assertion of entitlement to recovery for his sister.

We will discuss those cases herein, however, we cannot grant judgment in favor of plaintiff for those elements because they were not pleaded and it appears that those elements were never claimed from defendant as is required under the act.

The first of these elements is survivor's loss.

Under section 103 of the act "survivor" is defined as

(a) spouse, or

(b) child, parent, brother or sister or relative *dependent upon the deceased for support*. (Emphasis added.)

This court, like the court in Midboe v. State Farm Mutual Auto Insurance Co., 8 D.&C. 3d 83 (1978)

understood that the phrase "dependent upon the deceased for support" modified the entire group of persons listed in subsection (b) above. The Supreme Court affirmed Midboe (supra) by an equally divided court. The Superior Court, however, held that the Midboe decision was not a binding precedent upon them and decided, en banc, that the dependency requirement modified only the term "relative" in the act. Chesler v. Government Employees Insurance Co., 302 Pa. Super. 356, 448 A.2d 1080 (1982)

The holding in Chesler (supra) relied upon the rule of statutory construction known as the last antecedent rule. The Superior Court cited Black's Law Dictionary, Fifth Ed., for the following definition of the rule:

A canon of statutory construction that relative or qualifying words or phrases are to be applied to the words or phrases immediately preceding, and as not extending to or including other words, phrases or clauses more remote, unless such extension or inclusion is clearly required by the intent and meaning of the context or disclosed by an examination of the entire act.

The court ruled in that case that a mother who had received no support from her son prior to his death could recover survivor's loss benefits since the term "parent" did not immediately precede the qualifying language. We are bound by the decision of the Superior Court in the case at bar and must conclude that the plaintiff would also be entitled to survivor's loss benefits for his sister as well as both parents if such had been pleaded. We find no fault with plaintiff's counsel in not so pleading because the statute is confusingly drafted. However, we simply cannot grant judgment on this element when it had never been put at issue.

The next issue relates to work-loss recovery. In Freeze v. Donegal Mutual Insurance Co., 301 Pa. Super. 344, 447 A.2d 999 (1982), the Superior Court decided that the father of a deceased minor, acting as the administrator of the child's estate, could recover work-loss benefits for the 11-year old. That decision hinged upon the definition of "survivor" found in the Chesler (supra) case. That case is not distinguishable from the case at bar and so work-loss recovery for the sister would be payable if it had been claimed by plaintiff of defendant.

While plaintiff has not presented the issues relating to the recovery by the plaintiff for his sister's demise, our prior opinion was correct in that to the extent that recovery is had for the lost income element of survivor's loss (see section 103) the amount of lost income must be set off against the recovery for the same item in the work-loss category. The Supreme Court in Allstate Insurance Company v. Heffner, 491 Pa. 447, 421 A.2d 629 (1980) stated, "As we view the Act, the decedent's contribution of income under survivor's loss recovery shall be excluded from the amount recovered under work loss." It is true that both types of recovery were permitted in Freeze (supra), however, that decision did not deal with the issue of set-off. Plaintiff is entitled to only one recovery. Accordingly, the decision on this point was compelled by Heffner (supra) and was not in error.

Next to be considered is plaintiff's argument that the allowable benefits should be "stacked." This issue has been the source of much litigation elsewhere and has not yet been resolved directly by the appellate courts of this state. The stacking argument in a no-fault case goes to whether the ceilings on the amount of recovery for actual loss may be stacked so as to permit recovery for the actual loss

without resort to a tort action based upon the fact that the decedents were covered by more than one policy of insurance.

Section 301 of the act abolishes tort recovery only in part. Recovery may be had for losses beyond the specified no-fault limits as against a tort feasor under the old fault system of recovery. The act also does not provide for an absolute ceiling on the insurance carrier's liability. The carrier may, under other circumstances, incur much greater liability than the limits set out in the act.

Defendant argues, however, that its rates are determined based upon the limits set out in the act and that it has multiple exposure to risk by virtue of multiple vehicles being insured. However, this is not entirely true. Most of the loss provisions of the act pertain to injuries to persons. The number of persons insured does not necessarily increase as the number of vehicles increases. Therefore, the carrier's risk does not necessarily increase in proportion to the number of cars insured.

Defendant submits that a "multi-car" discount is granted for the insurance of more than one automobile. This may be true, however we do not know how much the discount is or why it is offered. In any event, it is apparent that our appellate courts have adopted a view of the act that impels us to alter our views on the stacking issue.

In Heffner (supra), Freeze (supra) and Chesler (supra) the courts cited section 102(a)(3) for the dominant purpose of the act. That purpose is "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors . . ." It is consistent with the above stated purpose to provide for the recoupment of actual losses by virtue of stacking and if the legislature

had intended to prohibit stacking they clearly could have done so.

It is particularly relevant in this case to note that plaintiff has no recourse in tort as against a negligent party. Surely, plaintiff's losses are no less significant because his family did not perish at the hands of a negligent vehicle operator. If he is going to be adequately compensated it must be under the No-fault Act. Accordingly, in light of the dominant purpose of the act stacking of coverages is permissible if it is necessary to adequately compensate the plaintiff.

Other jurisdictions' appellate courts have permitted stacking. See: Wasche v. Milbank Insurance Co., Minn., ___, 290 NW 2d 763 (1978); Cooke v. Safeco, 94 Nev. 745, 587 P.2d 1324 (1978) and other cases cited in footnote 3 of the Freeze (supra) case. In addition, several common pleas courts have permitted stacking based upon the rationale above stated. See: Wilson v. Keystone Insurance Co., No. 1296 (Philadelphia, 1981); Heinseys v. Nationwide Insurance Co., 21 D.&C. 3d 127 (1981)

How the court views the purpose of the No-fault Act actually determines the stacking issue. In subsection (b) of section 102 the two-fold purpose of the statute is set out. That subsection provides:

(b) Purposes — Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims.

In the prior opinion this court considered the statement of purpose found in the first part of

subsection (b) of section 102 to be of primary importance in the act. Accord: Kirsh v. Nationwide Insurance Co., 532 F. Supp. 766 (W.D. Pa., 1982). However, it is clear that our State Courts have placed more emphasis upon the later part of subsection (b) in light of the clear statement of policy favoring recovery under the act in section 102(a)(3). Thus, the dominant purpose of the act, as found by our appellate courts, virtually compels permitting the stacking of coverages, if necessary, to provide adequate compensation to a plaintiff.

This matter must be set down for hearing on the issue of the benefits claimed by plaintiff to determine the amount of the damages to be awarded to plaintiff. The prior decision of this court in this case is without error except for the "stacking" issue. Accordingly, we now enter the following

## ORDER OF COURT

And now, May 25, 1983, upon consideration of the exceptions filed by plaintiff and defendant, the briefs and arguments of the parties, and for the reasons set out in the annexed opinion, it is hereby ordered, adjudged and decreed that defendant's exceptions be and are hereby denied. It is further ordered, adjudged and decreed that plaintiff's exceptions to the opinion of court relating to the "stacking" of insurance coverages be and are hereby granted. All other exceptions raised by plaintiff are now denied for the reasons found in the attached opinion sur exceptions.