**Esis Inc. v. McDevitt**

*David E. Prewitt,* for plaintiff.
*Sean P. Flynn,* for defendant Thomas McDevitt.

*John Thomas Quinn,* for defendant Harleysville Insurance Co.

*Frank N. Gallagher,* for Giantonio Insurance Agency Inc.

OTT, *J.,* June 4, 1992—

## FACTUAL AND PROCEDURAL HISTORY

On June 5, 1980, Thomas McDevitt was severely injured when the van he was driving was involved in a single vehicle accident. Several months prior to the accident, McDevitt had purchased a 1965 Chevy van and thereafter contacted the Giantonio Insurance Agency Inc. to obtain insurance coverage on that vehicle. Ultimately, Giantonio acted as agent for the Harleysville Insurance Co. and obtained insurance policy no. PAA-045481 from Harleysville for the policy period March 11, 1980, through September 11, 1980. Harleysville attempted to cancel the insurance policy by mailing a notice of cancellation on April 23, 1980, ostensibly effective May 8, 1980. The effectiveness of this cancellation was the central issue in a subrogation action brought by plaintiff Esis Inc. Following the accident on June 5, 1980, Harleysville took the position that the policy of insurance had been canceled and declined payment of McDevitt's medical bills. Accordingly McDevitt made application to the Pennsylvania Assigned Claims Plan to have his medical expenses paid. Esis was assigned as a servicing carrier on the claim and paid out approximately $133,684 for medical bills incurred from the date of the accident through October 1986.

Esis brought the within action to recover these payments, along with appropriate interest from Harleysville

and/or its agent, Giantonio, or in the alternative, from McDevitt. McDevitt also cross-claimed against Harleysville for 18 percent interest on what he claimed were overdue payments.

The case first proceeded to a jury trial on February 9, 1987. At the close of plaintiff's case, a directed verdict was entered in favor of Esis and against Harleysville only in the amount of $120,471.02 with interest. On appeal, Superior Court reversed the trial court and remanded the matter for a new trial.[1] The case proceeded to a second jury trial on April 16, 1991. This time, the case was submitted to the jury which determined pursuant to special interrogatories that Harleysville had not effectively canceled the policy of insurance prior to the accident on June 5, 1980. Accordingly, we molded a verdict in favor of Esis and against Harleysville only, in the amount of $133,684. Pursuant to an agreement of counsel that applicable interest, if any, was a legal question to be determined by the court, we scheduled oral argument limited to the issue of interest for May 20, 1991.

Although the court sent notice of the May 20, 1991, argument to all counsel of record, the copy sent to counsel for McDevitt did not reach him and he failed to appear at argument.[2] Counsel for Esis and Harleysville appeared

---

1. The decision was issued in the form of an unreported memorandum opinion on May 2, 1988, at 379 Pa. Super. 667, 545 A.2d 390 (1988).

2. At an evidentiary hearing held on March 9, 1992, the court determined that McDevitt's counsel, William F. Fox Jr., Esquire, had failed to receive the notice because he had left the employ of the law firm he was with at the time of trial. Apparently, the notice was not forwarded to his new office address.

at the argument and the court assumed that the nonappearance of McDevitt's counsel indicated an abandonment of his cross-claim. Accordingly, the court encouraged Esis and Harleysville to settle the issue of interest owed to Esis. Shortly thereafter, the court was advised that Esis and Harleysville had reached a settlement whereby Harleysville would pay Esis 6 percent simple interest on the principal balance awarded. Later, when McDevitt's counsel learned of the tentative settlement and the earlier oral argument, he requested that the court schedule another argument wherein McDevitt could be heard on the issue of interest owed, if any, by Harleysville. A second argument took place on October 21, 1991.

We determined at the second argument that an evidentiary hearing might be helpful to establish dates and amounts of payments. Moreover, although McDevitt had clearly preserved the issue of his right to interest, we asked that he file a formal petition for assessment of interest, calculating the amount he claimed was due. McDevitt filed such a petition to which Esis and Harleysville filed responses and all issues were thus addressed at the evidentiary hearing on March 9, 1992. All parties agreed to McDevitt's calculations of the benefits paid and the dates thereof, although Esis and Harleysville reserved their objections to McDevitt's interest claim.

The interest issue was thoroughly briefed by the parties and supplemented by oral argument on May 4, 1992. Following a review of applicable case law and upon consideration of the arguments of counsel, we have determined that McDevitt's petition for the assessment of interest should be denied.

## DISCUSSION

Pursuant to 40 P.S. §1009.106(a)(2) of Pennsylvania's No-Fault Motor Vehicle Insurance Act,[3] no-fault benefits are overdue unless paid within 30 days of the carrier's receipt of reasonable proof, and overdue payments bear interest at the rate of 18 percent per annum. An insurance company's obligation to afford basic loss benefits may be discharged by reimbursing the victim or making direct payments to the supplier of products or services. In the instant case, McDevitt's claim was ultimately assigned to Esis by means of the assigned claims plan. Once such an assignment is made:

"The assignee ... has rights and obligations as if he had issued a policy of basic loss insurance complying with this act applicable to the injury or, in a case involving the financial inability of a restoration obligor to perform its obligations, as if the assignee had written the applicable basic restoration insurance, undertaken the self-insurance, or lawfully obligated itself to pay basic loss benefits." 40 P.S. §1009.102(b)

During the period Harleysville refused coverage, Esis was required to act as if it were the obligor who had issued McDevitt's policy. In its role as assigned obligor Esis paid benefits to McDevitt in a timely manner and thus no payments were overdue. Absent overdue payments, interest at 18 percent cannot be recovered. In *J.C. Penney v. Liberty Mutual Insurance Co.,* 12 D.&C.3d 340 (1979), the J.C. Penney Co. provided timely

---

3. Act of July 19, 1974, P.L. 489 no. 176, §101-701 constituted the Pennsylvania No-Fault Motor Vehicle Insurance Act in effect at the time of McDevitt's accident in 1980.

no-fault benefits to a claimant, under the mistaken belief that it had a contractual duty to do so. When it was later determined that Liberty Mutual was fully responsible for the payments, J.C. Penney sought reimbursement plus 18 percent interest. The court denied the claim for interest on the basis that the claims were not overdue once they were paid by J.C. Penney.

Throughout these proceedings McDevitt has relied on *Steppling v. Pennsylvania Manufacturers Association Insurance Co.,* 328 Pa. Super. 419, 477 A.2d 515 (1984), as supporting authority for his interest claim. We determine this case is not controlling. In *Steppling,* a claimant who resided in the household of a named insured of PMA was involved in an automobile accident. As a result she required hospitalization in three separate facilities. PMA timely issued checks to each facility but the checks were returned along with notifications that the bills had been paid in full by Blue Cross. When the injured party brought suit against the obligor to recover no-fault benefits, PMA argued that it had discharged its obligations to pay service providers by attempting to make direct payments to the hospitals, not withstanding the refusal of those tenders. Superior Court rejected PMA's reasoning and awarded the claimant his hospital expenses plus 18 percent interest. It did so pursuant to its determination that payments from a collateral source did not absolve the obligor from the language of the Act which states that "benefits are overdue if not paid within 30 days."

The central issue before us is the effect of timely payments for services by a source other than the primary obligor. While *Steppling* holds that payment by a col-

lateral source does not prevent the insured from seeking interest, *J.C. Penney* indicates that timely payment by a party acting as obligor does prevent such a claim. While Esis is clearly not a collateral source like Blue Cross, it is an assigned obligor pursuant to 40 P.S. §1009.108(b). As such Esis stood in the shoes of Harleysville vis-a-vis McDevitt and due to its prompt payment of medical bills, there were no overdue payments to which interest could attach.

Our analysis requires that we interpret section 106(a)(2) of the No-Fault Act, which provides for an obligor to pay 18 percent interest on overdue claims, in conjunction with section 108(b) (relating to the assigned claims plan) which states that the assignee "has rights and obligations as if he had issued a policy of basic loss insurance." The issue then becomes whether timely payment by the assignee, acting as obligor, prevents the injured party from seeking interest. To this end we look to the goals set forth in the introductory section of the No-Fault Act which include:

"(9) A statewide low-cost, comprehensive and fair system of compensating and restoring motor vehicle accident victims can save and restore the lives of countless victims by providing and paying the cost of services so that every victim has the opportunity to:

"(A) receive prompt and comprehensive professional treatment; and

"(B) be rehabilitated to the point where he can return as a useful member of society and a self-respecting and self-supporting citizen." 40 P.S. §1009.102(9).

The prompt payment of McDevitt's bills by Esis as assigned obligor allowed for the stated goals of the No-Fault Act to be met. Providers of professional treatment and rehabilitation were paid, and McDevitt's care was not interrupted or delayed. Stated differently, he suffered none of the harm that the imposition of 18 percent interest was intended to deter.

McDevitt's most appealing argument for the imposition of interest is that Harleysville, having abdicated its responsibilities, should not be relieved of the obligation to pay interest simply because Esis fulfilled its duty as the assigned claims carrier. McDevitt argues that our result will provide an incentive for insurance companies to deny coverage in bad faith without risk. Nevertheless, we fail to see how timely payment by an assigned obligor can lead to the imposition of interest which is imposed only on overdue payments. McDevitt's argument that as between Harleysville and him the payments are overdue is illogical. As the assigned claims carrier Esis stood in the shoes of Harleysville (obligor) and as the supplier of services, the provider of treatment and rehabilitation stood in the shoes of McDevitt (obligee). Simply stated, the assigned obligor made timely payments to the assigned obligees, and as a result, McDevitt received no-fault benefits. Mindful that the No-Fault Act "must be co-extensive with both law and logic, while at the same time eschewing the absurd and or unreasonable result." *Rife v. State Farm Mutual Automobile Insurance Co.*, 304 Pa. Super. 359, 365, 450 A.2d 720, 723 (1982), we find that timely payments made by an obligor cannot be "overdue" as the term is used in section 106(a)(2). Accordingly, we

conclude that McDevitt's petition seeking interest for over-due payment must be denied and dismissed.

## ORDER

And now, June 4, 1992, upon consideration of defendant Thomas McDevitt's petition for the assessment of interest, the responses filed thereto, the memoranda submitted by counsel and following oral argument on May 4, 1992, the petition is denied and dismissed.