John E. Scheetz and Robert W. Quinn, Appellants *v.* The Borough of Lansdale et al., Appellees.

Argued November 19, 1981, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*Thomas J. McNally,* with him *Leo Kostman,* for appellants.

*C. Stephens Vondercrone, Jr., Pearlstine, Salkin, Hardiman and Robinson,* for appellees.

OPINION BY JUDGE CRAIG, January 7, 1982:

John E. Scheetz and Robert W. Quinn, mayor and a councilman respectively of the Borough of Lansdale, appeal an order of the Court of Common Pleas of Montgomery County which granted a motion for summary judgment in favor of the borough, the eight other council members and the borough manager.

Questioning the validity of council proceedings with respect to the purchase of and payment for land for a firehouse, the mayor and the one councilman, as taxpayers and residents of the borough, sought a pre-

liminary injunction to prevent the council from purchasing the property; their complaint alleged that the council's resolutions to purchase the property were in violation of the Borough Code[1] because they were not in the form of an ordinance, required to be duly published before enactment, and were never presented to the mayor for approval or veto. Despite the rather confusing record, there is no substantial factual dispute.

We gather that the council pursued two distinct methods to finance the purchase.

First, while the council was looking into the purchase of the real estate, it attempted to pass a debt-incurring ordinance to finance the acquisition of property and construction of the firehouse by borrowing. Despite the mayor's repeated vetoes, the council authorized the publication of that debt-incurring ordinance. However, although there has been much debate over the presence or absence of a two-thirds vote necessary to overcome the mayor's veto of that ordinance,[2] we deem the point to be immaterial because council never borrowed the money.

At a special meeting on August 22, 1979, council passed Resolutions Nos. 79-6 and 79-7, authorizing the purchase of the property. No ordinance was published or enacted for that purpose.

Before the September 27 closing date, council embarked upon the second financing approach by adopting a motion transferring surplus from the borough's electric revenue fund to the general fund, in amount sufficient to pay for the real estate.

To uphold the summary judgment, there must be, not only an absence of genuine factual issues, but also

---

[1] Act of February 1, 1966, P.L. (1965), 1656, *as amended*, 53 P.S. §§45101 to 48501.

[2] *See* 53 P.S. §46007.

an entitlement to judgment as a matter of law. Pa. R.C.P. No. 1035(b).

As to the validity of this purchase, Section 1006(4) of the Borough Code requires that council "publish every proposed ordinance or resolution of a *legislative* character once in one newspaper of general circulation in the borough not more than sixty days nor less than seven days prior to passage." (Emphasis supplied.)

Thus, the question here, where no borrowing was involved, is whether the purchase could properly be authorized by resolution and the funds for it lawfully obtained by councilmanic transfer motion, with neither the resolution nor the motion being embodied in an ordinance which was advertised, enacted and subjected to mayoral veto as such.[3] The answer depends upon whether the actions were legislative or not.

Turning first to the purchase authorization resolutions, as distinct from council's financing action, we conclude that no ordinance was required.

A particular land purchase in itself is an action administrative in nature. Borough Code Section 1201

---

[3] In addition to noting "technical difficulties" such as the mayor's lack of standing and failure to join the previous owners as indispensable parties, the judge below held that the council's motions were lawful. He reasoned that the resolutions, although not published, were passed pursuant to the published debt-incurring ordinance, which was finally approved over the mayor's veto by a clear two-thirds majority on June 18, 1980—information the judge admittedly discovered *dehors* the record. Although a motion for summary judgment may be based on material other than the pleadings, such as affidavits, answers to interrogatories, depositions or admissions, there is no indication that the information as to the later succeeding vote was presented to the court in any of those forms; hence we cannot assume that fact. Goodrich-Amram 2d §1035(a):3. We also note that the mayor's political position should not defeat his legitimate interest as a taxpayer, a fact he properly averred, in bringing the action against council and the borough. *Concerned Taxpayers of Allegheny County v. Commonwealth*, 33 Pa. Commonwealth Ct. 518, 382 A.2d 490 (1978).

(4)[4] includes the power to purchase land as a general power of the borough, without reference to an ordinance. The parties have directed us to no other Borough Code provision specifically requiring an ordinance for the purchase authorization alone.

Next, we turn to the financing action. Subsection (3) of the key Section 1006(4) states that:

> The legislative powers of boroughs including *capital expenditures not payable out of current funds,* shall be exercised by or be based on an ordinance. All other powers shall be exercised by vote of the majority of the council present at a meeting, unless otherwise provided. (Emphasis supplied.)

We believe that the above language clearly indicates that council's action could be characterized as "legislative" only if the expenditure involved borrowed

---

[4] Section 1201, 53 P.S. §46201 states:

A borough may:

(4) Purchase, acquire by gift or otherwise, hold, lease, let and convey, by sale or lease, such real and personal property as shall be deemed to be to the best interest of the borough: Provided, That no real estate owned by the borough shall be sold for a consideration in excess of fifteen hundred dollars ($1500), except to the highest bidder after due notice by advertisement for bids in one newspaper of general circulation in the borough. Such advertisement shall be published once not less than ten days prior to the date fixed for the opening of bids, and such date for opening bids shall be announced in such advertisement. The acceptance of bids shall be made only by public announcement at a regular or special meeting of council. All bids shall be accepted on the condition that payment of the purchase price in full shall be made within sixty days of the acceptance of bids. Real estate owned by a borough may be sold at a consideration of fifteen hundred dollars ($1500) or less without advertisement or competitive bidding only after council estimates the value thereof upon receipt of an appraisal by a qualified real estate appraiser.

funds, *i.e.,* funds other than current funds. Because the debt-incurring ordinance was not passed over the mayor's veto (at least according to the record), no borrowing was authorized.

Council's tranfer of the purchase funds was permitted by the terms of Sections 8.02(e) and 8.07 of Ordinance No. 819, titled "Electric Revenue Fund and Other Funds. Application of Receipts and Revenues from the Electric System":

Section 8.02. Money from time to time in the Electric Revenue Fund shall be applied by the Treasurer of this Borough, in the manner provided herein, from time to time, to the following purposes, in the following order of priority:

. . . .

e. To make transfers to the General Fund or any special fund or funds or account or accounts of this Borough, for application for any proper purpose or purposes of this Borough as may be permitted by law, at times and in the manner permitted in Section 8.07.

Section 8.07 establishes guidelines for the borough treasurer to determine whether surplus funds are available for withdrawal, with fixed estimated costs, debt service, reserves and capital replacement requirements receiving priority over other needs. Section 8.03 states that the treasurer's authority to make payments from the electric revenue fund for maintenance of the electric system, to transfer money to the debt service fund, and to transfer and apply money to the capital replacement fund, is predicated upon "written order signed by a proper officer . . . of this Borough, as shall be specified by resolution of the Council. . . ."

The transfer by council thus being valid, we believe that the term "current funds" in Section 1006(3) in-

cludes funds earned as electric plant revenue, transferred to the general fund by proper procedure.

Consequently, the capital expenditure for the purchase of the property was not a legislative action requiring passage of an ordinance advertised by publication under Borough Code Section 1006(4).

Accordingly, we affirm.

### ORDER

Now, January 7, 1982, the order of the Court of Common Pleas of Montgomery County, No. 79-18400, dated September 16, 1980, is affirmed.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.