## Stull v. General Accident Fire & Life Assurance Corp.

*Anna Belle Jones,* for plaintiffs.

*Timothy D. Appelbe,* for defendant General Accident Fire & Life Assurance Corp. Ltd.

*Donald R. McKay,* for defendant Motorists Mutual Insurance Co.

ACKER, *J.,* September 23, 1983—This matter comes before this court upon a Joint Motion by both

defendants for summary judgment and an amended motion of Motorists Mutual Insurance Company alone for summary judgment. The court has for consideration all of the pleadings; an affidavit by Dean Augustine, an eyewitness to the occurrence; the deposition of Robert Schuetz, who observed part of the occurrence; and, a subsequent affidavit of Robert Schuetz following his deposition.

The action in assumpsit is a demand against both insurance carriers for such monies as plaintiff and the estate of the decedent may be entitled under the "Pennsylvania No-fault Motor Vehicle Insurance Act,[1] and in addition, legal interest for detention, attorney fees and costs.

It is plaintiff's position that the accident occurred during the "maintenance or use of a motor vehicle"; 40 Pa. C.S.A. § 1009.103. Both defendants contend that the accident did not occur through "maintenance or use of a motor vehicle," but rather it occurred during the course of loading or unloading a motor vehicle when the decedent was not occupying, entering into, or alighting from the vehicle, 40 Pa. C.S.A. § 1009.103. The accident occurred shortly after the bed of a truck which decedent had driven into a field for the purpose of dumping or spreading lime, struck a powerline. There is, of course, disagreement as to the legal significance as to what the decedent was actually doing at the time of the occurrence.

The joint motion for summary judgment and the amendment as to Motorists Mutual are based upon Pa. R.C.P. 1035. In passing upon such a motion, the court, by Subsection (b) of the rule, is required to consider the pleadings, depositions, and affidavits, if

---

1. Act of 1974, July 19, P. L. 489, 40 Pa. C.S.A. § 1009.101 et seq.

any, to determine whether there is a genuine issue as to any material facts.[2]

A summary judgment is to be entered only in the clearest of cases where no doubt exists as to the absence of a triable issue of fact. Williams v. Pilgrim Life Insurance Co., Pa. Super. , 452 A.2d 269 (1982). The rule has been also stated in Burd v. Commonwealth, Department of Transportation, 66 Pa. Commw. 129, 443 A.2d 1197 (1982), that a summary judgment may be entered when a case is clear and free from doubt, where the moving party establishes that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law, reading the record most favorably to the non-moving party. To uphold the Summary Judgment, there must be not only an absence of genuine factual issues, but also an entitlement to judgment as a matter of law. Sheetz et al. v. Borough of Lansdale, 64 Pa. Commw. 24, 438 A.2d 1048 (1982). Therefore, the facts must be examined in consideration of these rules concerning the granting of the summary judgment.

By the deposition and affidavits it is taken that just prior to this occurrence, decedent, Stull, was driving a truck filled with lime towards a farm for his neighbor and friend, Robert Schuetz. Schuetz was also in the area moving a lime spreader tractor and highlift onto the farm for the purpose of distributing the lime. It was raining heavily and getting dark. The owner of the truck, Schuetz, was not an eyewitness to all of the events, but did see a portion of them. Dean Augustine, who was present at the scene as an eyewitness, gave an affidavit stating

---

2. By Pa. R.C.P. 1035(b) the court is also required to pass upon answers to interrogatories and admissions which are on file, but in this case none are present.

that decedent Stull had followed Augustine to the farm where the material was to be dumped. At the occurrence Dean Augustine was accompained by his brother, Gerald, and Dan Shoaf. Decedent Stull backed the truck into the field and it became stuck. Stull decided to dump the material at that place. The witness, Augustine, was but a couple of feet away from the truck standing near the driver's door while Stull was in the truck. Stull started the mechanism to raise the bed of the truck while seated in the truck. Stull got out of the truck and walked to the dump trailer portion to pull a lever to open the tailgate. He walked back to the tractor cab and stood beside it with both feet on the ground. He reached into the truck with what was believed to be his left hand to touch the foot throttle to raise the truck bed. As the motor accelerated more rapidly, the bed of the truck would rise faster. The bed seemed to be going up in an uneven or crooked fashion, and Augustine told Stull of this who appeared to shrug. Augustine then backed away to get out of the way since he thought the truck might upset, and he moved to the rear of the truck. As he was doing so, he looked to the top of the bed and eventually became aware of some electric wires which he had not previously noticed because of the driving rain and the fact that it was becoming somewhat dark. He did, however, see the wires prior to the accident so he got Stull's attention and pointed out the wires to him. Stull shook his head in such a manner as to indicate to Augustine that he understood. Augustine kept walking backwards and eventually arrived at the rear corner of the truck while his brother, Gerald, was at the other corner. Augustine continued to watch the bed go up as it got closer to the wires.

Stull then stopped pushing the throttle. He was standing next to the truck, not touching it while

looking up at the high point of the bed. It was then that the truck bed touched the wires. Both Augustine and his brother saw it. Both hollered to Stull to run since there was a blue arc. Stull was still all right and the truck was still running.

The truck had homemade dump controls on the outside at the rear of the cab and Stull walked to those controls. Both brothers kept hollering at him knowing that he should not touch them because there was a continuing buzzing noise and a blue spark or arc occurring in the three to four inch space between the bedtop of the truck and the wires. Despite the warnings, decedent touched the dump controls. As soon as he did, a ball of fire went from the point of contact down the bed of the truck and back and forth underneath it in an area of approximately 20 feet circling around the truck. There was steam and smoke. Decedent was hanging onto the controls like he was locked on. There was nothing that could be done and in about 20 seconds he collapsed to the ground.

The owner of the truck, Schuetz, who according to Augustine, was on a big farm tractor, appeared, ran around from the front of the truck and with his first hit the dump controls that causes the bed to go down. By this time the fire underneath the tractor was close to Stull, decedent. When Schuetz hit the control, it knocked him back about ten feet. Schuetz then pulled Stull away from the truck.

By a subsequent affidavit, Schuetz confirmed that when he returned the following day, only a small portion of the lime was on the ground when he hit the dump lever located on the cab of the tractor. The sole purpose in hitting the control was to bring the bed back down and away from the electric wires. Since the truck was already up, the only purpose of either Stull or himself in touching, grasping

or hitting the dump lever was to immediately get the truck bed moving down into its regular position away from the electric wires.

Schuetz testified by deposition that he was in a pickup truck when he passed Stull at a point 75 to 100 feet from him. As he stepped out of the truck, he saw a ball of fire under the rear axle of the tractor, but could not see Stull.

He estimated that it was not more than one or two minutes from the time he saw Stull standing on the ground with his left arm inside the cab and his right arm on the dump control lever to the time that he saw the ball of fire at the rear of the trailer. Stull, according to Schuetz, was using his left hand to depress the gas pedal on the tractor in order to speed up the movement of the dump bed. Stull was accelerating the truck's motor less than thirty seconds before Schuetz saw the ball of fire. Upon seeing it, Schuetz ran to the accident site and found Stull lying on the ground. No part of Stull's body was in contact with the truck. He was perpendicular to the truck with his feet directly below the fuel tank on the outside of the cab which is located below the driver's door.

Following the accident, Schuetz discovered that the truck was stuck in the mud and it was necessary to tow the tractor and trailer to get it out of the mud. Schuetz believed that it would have been necessary to do it on the day of the accident had the accident not intervened.

In order to recover under the No-fault Act, it is required that it be established that the decedent was a "victim." 40 Pa. C.S.A. §1009.103. A victim is a person entitled to basic loss benefits due to the injury or death out of the "maintenance or use of the motor vehicle." Maintenance or use of the motor vehicle by sec. 1009.103 of the act is defined as, "mainte-

nance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it. Maintenance or use of a motor vehicle does not include: . . . (B) conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while occupying, entering into or alighting from it."

If the accident resulting in injury occurs in the Commonwealth, any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of the Act. 40 Pa. C.S.A. §1009.201(a).

Defendants argue, however, that because, "It is clear that Mr. Stull was engaged in 'conduct in the course of unloading' and, thus, plaintiff must show under Subsection (B), of the definition of maintenance or use of the motor vehicle 1009.102, that he was 'occupying entering into, or alighting from [a motor vehicle].' "

Defendants rely particularly upon Dull v. Employers Mutual Casualty Company, 278 Pa. Super. 569, 420 A.2d. 688 (1980) for this proposition. In that case the injured party was removing a boat from a car roof when he fell due to a condition of the land and sustained injuries. It was concluded that he was not "occupying, entering or alighting from" the car, and that, therefore, he was denied recovery in that he was not a victim under the No-fault Act. If, however, the decedent was not in the act of loading or unloading the truck or trailer at the time of the occurrence, he may be a victim who suffered injury arising out of the maintenance or use of the motor vehicle while not actually in the vehicle or entering or leaving it at that instant.

We cannot conclude that there is no genuine issue of a material fact in the instant case. Reasonable

minds may well conclude that decedent saw and appreciated the danger and although negligent in his subsequent conduct, was no longer concerned with the dumping of the lime, but rather in extricating the truck from a dangerous situation by lowering the truck bed. Rather than believe as contended by defendants, that decedent was obviously involved in dumping at the time of his death, a juror might conclude the opposite was occurring when the decedent attempted to return the vehicle to a position or condition were it would clear the wires and could be driven away. There is some support for this in the affidavit of the owner of the truck, Robert Schuetz, where he stated that only a small portion of the lime from the truck was on the ground and that the only purpose of the decedent in touching the dump lever was to immediately get the trailer bed moving down into its regular position away from the electric wires. A juror could, therefore, conclude that this was not an act of dumping or unloading, but was lowering the truck bed to its regular position so the truck could be moved from the danger.

Plaintiff relies on Fox v. State Automobile Mutual Insurance Co., Pa. Super. , 461 A.2d 299 (1983) for the proposition that the courts will give effect to express statutory exclusions, and that no-fault benefits may be awarded to someone injured immediately after operation of a motor vehicle has ceased. In that case, a vehicle had smashed into the residence of the plaintiff-Fox. She was in a second floor bedroom while her daughter and two of her daughter's girlfriends were asleep on the ground floor in the living room. Upon hearing the crash, which sounded like an explosiion, and fearing for her children's safety, she immediately started down the steps to the living room, tripped over debris which had been thrown onto the steps by the crash,

fell and was injured. Defendant insurance company contended that the case was controlled by Dull v. Employers Mutual Casualty Co., supra. The court stated tht consideration of Dull was unwarranted for that case involved the loading or unloading of a motor vehicle, citing Eichelberger v. Warner, 290 Pa. Super. 269, 434 A.2d 747 (1981). The court concluded that the injury did arise out of the use of the motor vehicle of the insured. The words, "arising out of" were deemed to mean "causally connected with" and not "proximately caused by." We, therefore, conclude that the teachings of Fox v. State Auto Mutual Insurance Co., supra, are applicable in the instant case.

In addition, however, in order to permit recovery, there is a requirement that it be found that the injury suffered arose out of the maintenance and use of a motor vehicle [40 Pa. C.S.A. §§1009.201, 1009.103]. Howe v. Harleysville Insurance Companies, Pa. Super. , 459 A.2d. 412 (1983) is an excellent example of that requirement. There, plaintiff was a passenger in a Jeep owned and operated by his father who was insured through defendant-insurance company. Howe sustained injury when a hunter mistakenly believed the Jeep was a deer and shot at it. The bullet pierced the door of the Jeep and lodged in Howe's leg. He sought benefits under the No-fault Act which were granted by the lower court, but reversed on appeal, with the appellate court concluding that under the No-fault Act there must be some connection, more than mere chance or happenstance beween the injuries sustained and the insured vehicle.[3]

---

3. Other examples are Sweitzer v. Aetna Life and Casualty Co., Pa. Super. , 452 A.2d 735 (1982) where the plaintiff sustained injuries when she was pulled from her vehicle and assaulted by an operator of a motorcycle. Erie Insurance Ex-

Although there may be some question of whether decedent was pushing a homemade lever to close the tailgate or whether he was pushing a lever to bring the bed of the truck down out of the wires so it could be driven away, the accident was not unconnected with the use of the motor vehicle. If the truck, in the normal course of its operation, had backed into the wires, there would be no question that the coverage would be granted. Defendants would desire us to remove the case from the coverage because the decedent was engaged in loading or unloading which has already been concluded against the defendants, and that the death did not arise from the maintenance or use of the vehicle.

The test as to whether "maintenance and use" was present at the time of the accident is that of causation, i.e., "but for" and not proximate cause, as is well-demonstrated in Eichelberger v. Warner,

---

change v. Eisenhuth, 305 Pa. Super. 571, 451 A.2d 1024 (1982), where the injured party had been a passenger in a motor vehicle pursued by a police officer because the driver had failed to pay for gasoline. To avoid being struck, a police officer leaped on the hood of the moving vehicle in which the plaintiff was seated and fired several shots into the car which struck and wounded the plaintiff. It was concluded that there was no causal connection. In Riffe v. State Farm Mutual Automobile Insurance Company, 304 Pa. Super. 359, 450 A.2d 720 (1982), plaintiff's vehicle was illegally parked in an airport. Upon returning to his car, an officer was ticketing it. An altercation occurred and the plaintiff ran to his automobile and attempted to drive away nearly striking the officer in the process. The officer fired two shots to attempt to retard its movement. A second officer fired three shots, one of which struck the plaintiff in the arm. It was concluded that the bullet wound did not arise from the maintenance or use of the automobile and had not been accidentally sustained. Plaintiff was neither a victim, nor injured within the meaning of the No-fault Act.

supra. There, coverage was permitted both under the defendant's automobile accident policy and his homeowner's policy. Considering only the automobile accident policy, recovery was permitted by an injured party who had stopped to assist two women whose automobile had run out of gas. The two women had left the automobile and had gone to a gasoline station and had returned with a can of gas. A short time later, a vehicle ran into the back of the disabled vehicle which struck and killed one of the two females who had gone for the gas. The vehicle injured the two men, including plaintiff Eichelberger who had stopped to assist. The court noted that "maintenance' as used in the context of an automobile insurance policy includes all acts which come within the ordinary scope and meaning of the word." 290 Pa. Super. 274, 434 A.2d at 750. Therefore, the replacement of the fuel without which a motor vehicle cannot operate, is a form of maintenance. It is not necessary to show that there was a causal connection between the ownership, maintenance or use of the vehicle. It is enough to show that a causal relationship arising out of the provisions of the insurance policy was present.

The fact that a third person had stepped in the path of the oncoming car resulting in the accident did not break the causal chain. Rather, the court held that had the decedent driver's vehicle not run out of fuel, she would not have been standing on the highway waiting while plaintiff poured gasoline into her car. If recovery can be permitted for a person pouring gasoline into another's car to again make it operable, it would seem that an effort to lower the bed of a truck engaged with electric lines to permit it to be driven from the scene is at least equally causally related to the maintenance or operation of the vehicle.

We conclude against the insurance carriers. In doing so, we recognize that construction of the No-fault Act must be co-extensive with both law and logic while at the same time eschewing the absurd or unreasonable result. Riffe v. State Farm Mutual Insurance Company, page 723, supra.

By the defendant, Motorists Mutual Insurance Company amended motion for summary judgment, sec. 204(a) of the No-fault Act, 40 Pa. C.S.A. §204(a) is set forth as grounds to grant the amended motion. By the allegations of the complaint which are not denied, decedent, Stull, was insured by General Accident. This policy was in full force and effect at the time of Stull's death on April 13, 1981. General Accident admits in Paragraph 8 through Count 2 of plaintiff's complaint against Motorists Mutual, Robert Schuetz, that the owner of the truck was insured on the date of the accident with that company. It is alleged in the complaint, Paragraph 12, that as of April 13, 1981, the policy of Schuetz with Motorists Mutual was in full force and effect. The allegations of Paragraph 12 are admitted by Motorists Mutual. General Accident, however, attempts to avoid the provisions of sec. 204(a) of the act which clearly put the primary obligation upon the insurance carrier of the decedent[4] by alleging in Paragraph 3 of new matter that decedent was acting as an employee of their insured, Robert T. Schuetz.

There is no support for the contention that the decedent was an employee of General Accident's insured, Schuetz. To the contrary, the deposition of Schuetz disclosed that he and decedent had been friends and neighbors and had worked together as

---

4. 1983, Supp. The Pennsylvania No-fault Vehicle Insurance Act, editor, David S. Schrager, sec. 1:15.3, at page 73.

farmers for each other for approximately five years. Neither decedent, nor Schuetz considered one the employee of the other, or a partner in any business venture. As farmers, they helped each other out by exchanging time and labor from time to time with no accounting and with little effort to keep track between them. At the time of this accident decedent was simply helping his neighbor. General Accident has made no effort to deny this testimony of their own insured, and therefore, this court accepts it as being true and correct. Therefore, the primary responsibility for the insurance coverage and monies which may be determined to be owing in this case rests with the insurance carrier of the decedent, General Accident Fire and Life Assurance Corporation, Ltd.

## ORDER

And now, this September 21, 1983, it is hereby ordered and decreed that the defendants' motion for summary jugment is denied. It is further ordered and decreed that amended motion of defendant, Motorists Mutual Insurance Company for summary judgment is granted.