485 A.2d 499

**Jennie GLAD, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued June 20, 1984.

Filed Dec. 7, 1984.

Petition for Allowance of Appeal Denied March 18, 1985.

Frank M. Gianola, Pittsburgh, for appellant.

Paul L. Hammer, Pittsburgh, for appellee.

Before TAMILIA, JOHNSON and MONTGOMERY, JJ.

TAMILIA, Judge:

The sole question in this case is whether appellant is entitled to benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act[1] for the shotgun slaying of her husband, a motor vehicle occupant, who was killed outside his vehicle while fleeing from a third party. The trial court held that there could be no recovery and entered summary judgment in favor of State Farm Mutual Automobile Insurance Company, the No-fault insurance carrier. We affirm.

The facts are not in dispute. On August 12, 1980, Richard Stoyko shot and killed Shelby Jean Storm, the woman with whom Stoyko lived, following a heated argument the

1. Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 101 et seq., 40 P.S. § 1009.101 et seq., *repealed and superseded* by Act of February 12, 1984, P.L. 41, No. 11, § 3, 75 Pa.C.S.A. § 1701 et seq. as amended.

previous day. After the shooting, Stoyko drove to an isolated dirt road in the vicinity of Gates Hollow, Pennsylvania and fell asleep in his car. When he awoke, he noticed that Joseph Glad's pickup truck, which was parked directly behind his car, had blocked him in. Stoyko then told Mr. Glad to move his truck, but he refused. Mr. Glad then got out of his truck and was immediately shot and killed. Stoyko then put the shotgun and some alcoholic beverages from his car in the deceased's truck and drove it from that time until he turned himself in to the police the following day.

Appellant, Jennie Glad, filed an action in assumpsit against appellee, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), to recover No-fault insurance benefits pursuant to contracts of automobile insurance issued by State Farm to herself and to her deceased husband. The insurance policies issued by State Farm contain the following relevant clause:

> We will pay in accordance with the No-fault *Act* for *bodily injury* to an *insured,* caused by accident resulting from the maintenance or use of a *motor vehicle* as a vehicle: ... (Emphasis in original)

Nowhere in the policies are the terms "accident", "maintenance", or "use" defined.

Appellant's complaint avers that her husband's death resulted from the "use, ownership, operation and maintenance" of his insured vehicle. On March 30, 1982, State Farm filed a motion for summary judgment on the basis that Mr. Glad's death did not arise out of the "maintenance or use of a motor vehicle" and that Mr. Glad was not a "victim". In accordance with Rule 1035(b) of the Pennsylvania Rules of Civil Procedure, appellant filed an opposing affidavit and the parties supplied the Court *en banc* with a partial transcript of the murder trial of Richard Stoyko, who was convicted of first degree murder for the death of Mr. Glad. The affidavit and a partial transcript of the

murder trial, which contained the testimony of Lieutenant Blair R. Jones of the Uniontown Police Department and that of the defendant, Stoyko, were made part of the record by an Order dated April 20, 1983. State Farm's motion for summary judgment was granted on March 17, 1983, by the Court *en banc* consisting of the Honorable Judges, S. Louis Farino and Ralph H. Smith, Jr. The lower court held that Mr. Glad's death did not arise out of the maintenance or use of the motor vehicle because the actual shooting occurred outside of the truck. This appeal followed.

The issue raised by the appellant is whether the decedent was a "victim" of an accident arising out of the "maintenance or use of a motor vehicle," 40 Pa.C.S.A. § 1009.103, entitling appellant to collect No-fault benefits. We have considered this issue in several factually similar, albeit nonidentical, cases to the case *sub judice,* and have concluded that a claimant cannot recover. *See Camacho v. Nationwide Insurance Co.,* 314 Pa.Super. 21, 460 A.2d 353 (1983); *Howe v. Harleysville Insurance Companies,* 313 Pa.Super. 65, 459 A.2d 412 (1983); *Schweitzer v. Aetna Life and Casualty Co.,* 306 Pa.Super. 300, 452 A.2d 735 (1982); *Erie Insurance Exchange v. Eisenhuth,* 305 Pa.Super. 571, 451 A.2d 1024 (1982); *Rife v. State Farm Mutual Automobile Insurance Co.,* 304 Pa.Super. 359, 450 A.2d 720 (1982).

Appellant contends that when the insurance policy in question is read in conjunction with Section 1009.201 of the No-fault Act, i.e., that "any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this act," it becomes clear that she may recover under the letter and spirit of the Act. We disagree with such a liberal interpretation of our Legislature's intention in promulgating the No-fault Act. As we stated in *Rife v. State Farm Mutual Automobile Insurance Co.,* "to sanction the claim of the appellant in the instant case would be to affix the imprimatur of this Court to the manipulation of a statute that was not, at least from our reading of the statutory and case law on the subject,

contemplated by the legislators." 304 Pa.Super. at 364, 450 A.2d at 723.

We are faced with an interpretation of the legislative intent and purpose in enacting the No-fault Act. Section 1009.102(b) clearly sets forth the purpose of the Act: "[I]t is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." In enacting the No-fault Act, the Legislature sought, in part, "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways ..." 40 P.S. § 1009.102(a)(3).

In the definitional section of the No-fault Act, 40 P.S. § 1009.103, "victim" is defined as: "an individual who suffers injury arising out of the maintenance or use of a motor vehicle." In this same section, the term "injury" is held to be: "accidentally sustained bodily harm to an individual and that individual's illness, disease, or death resulting therefrom." *Id.* Also, " 'maintenance or use of a motor vehicle' means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into or alighting from it." *Id.*

The No-fault Act must be read as a whole since to interpret each section individually would alter the scope envisaged by the Legislature. "It is clear that this was never intended to be a general liability insurance which would cover all injuries, no matter how remotely connected with the use or maintenance of a motor vehicle, but is intended to cover motor vehicle accidents." *Camacho v. Nationwide Insurance Co.*, 314 Pa.Super. at 23, 460 A.2d at 354. Any other interpretation of the Act would defeat its purpose and economic feasibility. We hold that the term "motor vehicle accident" is one of common parlance in today's society and the coverage of the No-fault Act is

limited to accidents during the maintenance or use of motor vehicles. *Id.*

Another instructive case is *Day v. State Farm Mutual Insurance Co.*, 261 Pa.Super. 216, 396 A.2d 3 (1979), where this Court stated:

> The real issue in this case involves the instrumentality used to cause the injury, not whether it was intentionally or accidentally inflicted. Automobile insurance ... [is] designed to compensate victims for vehicle-caused injuries. There must be some connection between the harm done and the insured vehicle. *See Wheeler et al. v. London Guarantee & Accident Co.*, 292 Pa. 156, 140 A. 855 (1928), *Ferry v. Protective Indemnity Company of New York*, 155 Pa.Super. 266, 38 A.2d 493 (1944), *Presbyterian University of Pennsylvania Medical Center v. Keystone Insurance Co. and Willie Bass*, 251 Pa.Super. 71, 380 A.2d 381 (1977). The vehicle itself is covered by the automobile policy, and an individual is covered only by nature of his function as the driver of that vehicle. The intent of the driver becomes relevant only after a determination is made that the injury complained of was caused by the vehicle. This is, in fact, the meaning of the language 'arising out of the ownership, maintenance or use of such ... motor vehicle,' contained in the State Farm policy.

*Id.*, 261 Pa.Superior Ct. at 219, 396 A.2d at 5. *See also Rife v. State Farm Mutual Automobile Insurance Co.*, 304 Pa.Super. at 365–66, 450 A.2d at 723.

Appellant contends that a mere "but for" causation test, i.e., a cause and result relationship, is enough to establish a causal link between the "ownership, maintenance and use" of the vehicle and the death of Mr. Glad. *See, e.g., Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.,* 403 Pa. 603, 170 A.2d 571 (1961). While this Court has previously held that a cause and result relationship is enough to satisfy the "arising out of" provision of an automobile insurance policy, *Eichelberger v. Warner*, 290 Pa.Super. 269, 434 A.2d 747 (1981), we recently have re-

affirmed our position that the automobile itself, not some external force, must be the instrumentality used to cause the injury in No-fault cases.[2] *Spisak v. Nationwide Mutual Insurance Co.*, 329 Pa.Super. 483, 478 A.2d 891 (1984) (motorist who had died as a result of carbon monoxide poisoning while in a parked automobile was allowed to recover No-fault benefits). Moreover, the *Eichelberger* case can easily be distinguished from the present one as it involved injuries directly caused by a motor vehicle.

Consequently, we conclude that the unprovoked, intentional shooting of appellant's husband was not within the scope of the protection contemplated by the Legislature. Here, we have an intentional act which has no connection with a motor vehicle accident other than that the injured party was operating a motor vehicle prior to his death.

For the foregoing reasons, we affirm the Order of the lower court granting State Farm's motion for summary judgment.[3]

Order affirmed.

2. In *Schweitzer v. Aetna Life and Casualty Co.*, 306 Pa.Super. 300, 452 A.2d 735 (1982), this Court held that the causal connection required for purposes of coverage under the No-fault Act need not rise to the level of proximate causation, but "there must be some connection, more than mere chance or happenstance, between the injuries sustained and the insured vehicle." *Id.*, 306 Pa.Superior Ct. at 303, 452 A.2d at 737.

3. We need not address appellant's contention that Mr. and Mrs. Glad were the "victims" of an "accident" because of our prior determination that the death of Mr. Glad did not arise from the "maintenance or use" of a motor vehicle. Additionally, appellants contend that the insurance policies were ambiguous as to whether or not they covered death or injury resulting from the intentional acts of another. Referring to *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974), appellants claim that State Farm had a duty to explain the meaning of the terms "accident", "maintain", or "victim" to the Glads, whose ability to read was limited. As we have held that the above terms were not ambiguous, and that the purpose and intent of the No-fault Act precludes appellant's claim, these contentions are rendered moot, and we need not discuss them. Furthermore, we wish to point out that the *Hionis* case upon which appellant relies, has been abrogated by our Supreme Court in *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983).