## Figard v. Pa. National Mutual Casualty Co.

*Jon Barkman,* for plaintiff.

*R. Thomas Strayer,* for defendant Nationwide Insurance Company.

*Frank A. Orban Jr.,* for defendant Pennsylvania National Mutual Casualty Insurance Company.

FIKE, *J.,* December 22, 1986—This case is before the court on motions for summary judgment filed by plaintiff and by defendant, Nationwide Insurance Company.

Plaintiff filed a petition for declaratory judgment against the defendant insurance companies, to determine plaintiff's right to be compensated under the Pennsylvania No-fault Motor Vehicle Insurance Act[1] (hereinafter No-fault Act) for injuries plaintiff received on January 24, 1985, when he was struck by a passing automobile, as plaintiff was standing outside and behind a vehicle in which he had been a passenger.

Elsie Peracchio was the driver of the automobile in which plaintiff had been riding as a passenger. The Peracchio vehicle was insured by defendant, Pennsylvania National Mutual Casualty Insurance Company, (hereinafter PNI). An individual by the name of Kirmeyer was the driver of the automobile that struck plaintiff. The Kirmeyer vehicle was insured by defendant, Nationwide Insurance Com-

pany, (hereinafter Nationwide). At the time of the accident, a tow truck was also present in the vicinity. The tow truck was operated by James Weaver. The Weaver vehicle was insured by PNI.

The declaratory judgment action named PNI, as the insurer of the Peracchio vehicle, and Nationwide, as the insurer of the Kirmeyer vehicle, as original defendants. Subsequently, Nationwide joined PNI as an additional defendant, as insurer of the Weaver tow truck vehicle, asserting that the Kirmeyer vehicle was also involved and possibly liable for payment of benefits.

Defendant, PNI, responded to the complaint by filing preliminary objections, claiming, inter alia, that plaintiff's complaint failed to aver facts sufficient to establish that PNI, as the insurer of the Peracchio vehicle, was the applicable security under section 204(a) of the No-fault Act. More specifically, PNI's preliminary objections claimed that plaintiff's complaint did not aver facts sufficient to show that plaintiff was an insured, or the driver or other occupant of a motor vehicle, under the No-fault Act, section 204(a) and that plaintiff, therefore, must look to Nationwide as the carrier for the Kirmeyer vehicle which actually struck plaintiff, as the applicable security under section 204(a)(4). PNI's brief in support of its preliminary objections stated the issue to be whether plaintiff was an occupant for purposes of section 204(a)(4) of the No-fault Act. In the court's opinion on PNI's preliminary objection, the issue presented by those preliminary objections was stated by the court as follows: "When an uninsured passenger in a motor vehicle exits that vehicle after it becomes lodged in a snowbank on the berm of a highway, and then is struck and injured by an oncoming vehicle, while trying to free his vehicle from the snow, is the no-

fault carrier for the vehicle of which he was a passenger liable under section 204(a)(3) of the Pennsylvania No-fault Motor Vehicle Insurance Act?" Answer to this issue turned upon whether plaintiff, when struck, could have been considered an "occupant" of the vehicle in which he had been riding as a passenger, even though he was not physically present in that vehicle at the time of the impact. Judge Shaulis of this court decided that plaintiff's complaint did aver facts sufficient, if proved, to establish that plaintiff was an occupant under section 204(a)(3) of the act and overruled PNI's preliminary objections. Slip opinion of Norman A. Shaulis, P.J., July 30, 1985.

Nationwide filed an answer and new matter in response to plaintiff's complaint. PNI filed an answer to plaintiff's complaint, an answer and new matter in response to Nationwide's complaint against PNI as additional defendant, and a reply to the new matter in Nationwide's answer. Nationwide has also filed a reply to PNI's new matter.

The parties have taken the depositions of Peracchio, the operator of the automobile in which plaintiff was riding; Kirmeyer, the operator of the automobile which struck plaintiff; Weaver, the operator of the tow truck; an individual by the name of Baker, who happened upon the scene and assisted in trying to remove the Peracchio vehicle from the snowbank; and plaintiff himself, all of which are of record.

Plaintiff and Nationwide now argue for summary judgment, claiming that the record as now constituted compels the legal conclusion that plaintiff was an "occupant" (within the legal definition of that term) of the Peracchio vehicle at the time of impact, and that PNI, the insurer of the Peracchio vehicle,

is therefore, responsible for paying plaintiff's claim under section 204(a)(3) of the No-fault Act.

Plaintiff also argues alternatively that if it should be determined as a matter of law that plaintiff was not still an occupant of the Peracchio vehicle at the time of impact so as to fall within section 204(a)(3), the Peracchio vehicle nevertheless is an "involved" vehicle under section 204(a)(4) and that PNI, as the carrier to whom claim was first made, is obliged to pay plaintiff's claim now under section 204(b), and then to seek contribution from Nationwide.

PNI argues that, at the least, the existence of a dispute over material issues of fact precludes summary judgment for either plaintiff or Nationwide.

Although not filing a motion for summary judgment, PNI also argues that, in fact, summary judgment should be entered in its favor. PNI claims that the facts show as a matter of law that plaintiff was not an occupant of the Peracchio automobile, that the Peracchio vehicle was not involved in the accident, and that Nationwide, as the insurer of the Kirmeyer vehicle which actually struck plaintiff, is solely responsible to pay plaintiff's claim.

The record reveals the following

## FACTS

On January 24, 1985, shortly after 3:00 p.m., plaintiff and Elsie Peracchio left Seven Springs and drove to Rockwood. Peracchio drove her automobile. Plaintiff was a passenger. At about 5:00 or 6:00 p.m., plaintiff and Peracchio began their return trip from Rockwood to Seven Springs. When they were near Seven Springs, as they traveled in a generally westerly direction, on a legislative route in Middlecreek Township, the Peracchio automobile was crowded off the road into a snowbank along the northerly side of the road, where it became stuck.

The Peracchio automobile was parallel with the road and facing westerly.

Plaintiff got out of the car and attempted to free the vehicle from the snowbank.

Shortly thereafter, Paul Baker passed by, parked his vehicle some distance from the scene, and returned and assisted plaintiff and Peracchio in their attempts to free the Peracchio automobile.

A tow truck operated by James Weaver passed by on its way to Seven Springs and Weaver observed the stranded Peracchio automobile.

Baker, Figard and Peracchio continued to attempt to dislodge the Peracchio automobile but were not able to move it at all.

Attempts to free the automobile were suspended and Baker and plaintiff stood behind the Peracchio vehicle talking. Discussions centered on obtaining assistance in getting the car out of the snowbank.

Baker and plaintiff had discontinued their attempts to move the vehicle and were standing behind the car between 15 minutes and 20 minutes to one-half hour, when the tow truck came by again on its return from Seven Springs. Baker and plaintiff were standing anywhere from 2 to 3 feet to 10 feet behind the car.

About one-half hour elapsed from the time the tow truck first passed the Peracchio automobile until the tow truck's return.

The tow truck was traveling east on the legislative road and stopped near the Peracchio vehicle. Weaver, the operator of the tow truck, started winding his window down to speak to Baker and plaintiff, when Weaver saw Kirmeyer's headlights approaching from his rear. Weaver then moved his tow truck forward, fearing Kirmeyer would not be able to stop or safely pass.

Richard Kirmeyer had arrived at Seven Springs at approximately 6:25 p.m. and was traveling in an easterly direction on the legislative road. Kirmeyer saw the tow truck come out of the Seven Springs exit as it pulled onto the legislative route ahead of Kirmeyer. Kirmeyer proceeded easterly on the legislative road some distance behind the tow truck.

As Kirmeyer approached the site where the Peracchio automobile was stuck, he saw the Peracchio automobile along the northerly side of the road and the tow truck on the road ahead of him. Kirmeyer continued downgrade through the area where the Peracchio and Weaver vehicles were located, but as he passed by the Peraccio automobile, struck both plaintiff and Baker.

Kirmeyer testified in his deposition that he did not strike either the Peracchio automobile or the tow truck. Peracchio testified in her deposition that when the tow truck moved ahead, she then felt a bump and that afterward she noticed a chrome wheel on her automobile had been damaged. Peracchio did not testify as to the cause of the bump, however.

Peracchio was in her vehicle at the time plaintiff and Baker were struck by Kirmeyer. The Peracchio automobile's engine was not running at the time.

Plaintiff was unemployed at the time of the accident and was not an insured under any of the subject insurance policies.

On or about February 12, 1985, plaintiff submitted an application for no-fault benefits to PNI, the insurer of the Peracchio vehicle. PNI denied the claim. Nationwide, the insurer of the Kirmeyer vehicle, was advised of the case and later also sent a denial letter to plaintiff's counsel.

Plaintiff then initiated the instant declaratory judgment action.

## DISCUSSION

Section 204 of the No-fault Act reads:

"§204. Source of basic restoration benefits.

(a) Applicable security. — The security for the payment of basic loss benefits applicable to an injury to:

(1) an employee, or to the spouse or other relative of an employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;

(2) an insured is the security under which the victim or deceased victim is insured;

(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and

(5) any other individual is the applicable assigned claims plan.

(b) Multiple sources of equal property. — If two or more obligations to pay basic loss benefits apply equally to an injury under the priorities set forth in subsection (a) of this section, the obligor against whom a claim is asserted first shall process and pay the claim as if wholly responsible. Such obligor is thereafter entitled to recover contribution pro rata from any other obligor for the basic loss benefits

paid and for the costs of processing the claim. If contribution is sought among obligors responsible under paragraph (4) of subsection (a) of this section proration shall be based on the number of involved motor vehicles."

Plaintiff's motion for summary judgment states that plaintiff falls within section 204(a)(4) as an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident. Plaintiff's motion consequently contends that since plaintiff first submitted a claim to PNI, PNI is obliged to pay the claim under section 204(b); and that if PNI then believes Nationwide should be liable for plaintiff's claim, PNI can proceed to seek contribution from Nationwide under section 204(b).

At argument and in his brief, however, plaintiff advanced the alternative argument that, in fact, the record, when read in the light most favorable to PNI, compels the conclusion, as a matter of law, that plaintiff was an "occupant" of the Peracchio vehicle at the time of impact and that, therefore, in the sequential arrangement of section 204(a) of the No-fault Act, PNI, the insurer of the Peracchio vehicle, is the sole applicable security for payment of plaintiff's benefits, under section 204(a)(3).

In support of its motion for summary judgment, Nationwide advances the latter theory, i.e., that the record shows as a matter of law that plaintiff, at the time of impact, was an occupant of the Peracchio vehicle and that PNI, the insurer of the Peracchio vehicle, must pay plaintiff's claim under section 204(a)(3).

PNI first contends that the court is limited by plaintiff's summary-judgment motion to consideration only of a claim under section 204(a)(4) of the No-fault Act. Counsel for PNI submitted a supplemental brief arguing that plaintiff's motion con-

cedes that section 204(a)(3) does not apply and that we are, therefore, precluded from even considering whether section 204(a)(3) might provide the applicable security.

It is true that plaintiff's present motion claims summary judgment under section 204(a)(4). However, Nationwide's motion was not so limited. Therefore, even if we were to construe plaintiff's summary judgment motion as limiting us to a consideration only of the section 204(a)(4) issue, we still would be confronted with the section 204(a)(3) issue under Nationwide's summary judgment motion.

We note, also, that both plaintiff's and Nationwide's briefs have raised both the occupancy issue under section 204(a)(3) and the claim under section 204(a)(4).

PNI suggests that we must construe the statements in plaintiff's motion as an admission and conclusive on the occupancy issue, thereby foreclosing plaintiff from recovery under section 204(a)(3). In the present context, however, whether or not the record shows plaintiff to have been an occupant is a legal question. See Utica Mutual Insurance Company v. Contrisciane, 504 Pa. 328, 473 A.2d 1005 (1984). Regardless of the legal conclusion in plaintiff's motion, the court must address Nationwide's claim, independently examine the record, and decide on its own the legal conclusions to be drawn therefrom.

We note preliminarily that the prior overruling of PNI's preliminary objections does not automatically decide the issue on the present motions for summary judgment. The issue on PNI's preliminary objections was whether the complaint alleged sufficient facts to state a cause of action. Now, however, on motions for summary judgment, we are required

to examine, not just the averments of the complaint, but the entire record, and to view that record in the light most favorable to the nonmoving party, to determine whether any material factual issue exists.

On the other hand, the principles of law deemed applicable in one phase of a case will be applied throughout the case, absent extraordinary or compelling reasons to do otherwise. In the instant case, when resolving the issues presented by PNI's preliminary objections, our court not only evaluated the facts alleged in the complaint, but also decided which principles of law applied in making that evaluation. Therefore, we will apply to our evaluation of the record at this stage of the proceedings, the principles of law that Judge Shaulis deemed applicable at the preliminary objection stage.

"In determining the applicable source of basic loss benefits under section 204's priority system, the pertinence of each subsection must be considered seriatim — that is the applicability of each preceding subsection must be excluded before the next may be considered." Tyler v. Insurance Company of North America, 311 Pa. Super. 25, 457 A.2d 95 (1983).

It is undisputed in this case that plaintiff, at the time of the accident, was neither an employee in a vehicle provided by his employer nor an insured. Subsections (1) and (2) of section 204(a), therefore, do not apply.

The issue then is whether plaintiff is entitled to benefits from the applicable security specified in subsection (3) or subsection (4). The answer to this question depends on whether plaintiff, at the time of impact, was an "occupant" of a vehicle involved in an accident. If so, section 204(a)(3) specifies the

applicable security and section 204(a)(4) does not come into play.

Plaintiff and Nationwide contend that plaintiff was still such an occupant of the Peracchio vehicle at the time of impact and that PNI, as the insurer of the Peracchio vehicle, is the applicable security under subsection (3). PNI, on the other hand, claims that plaintiff was not such an occupant, and that plaintiff, therefore, must look to the applicable security under subsection (4) of section 204(a).

In order for section 204(a)(3) to apply, the facts must show that the injured party was both (1) either a driver or occupant, and (2) of a vehicle involved in an accident. In the factual context of this case, if section 204(a)(3) is to apply, the facts must show that plaintiff was an occupant and also that the occupied vehicle was involved in an accident. This "involvement" prerequisite is a causation requirement, very similar to the causation issue involved in determining the threshold question of whether the No-fault Act applies in a given instance at all. See eg., Varner v. Nationwide Mutual Insurance Company, 340 Pa. Super. 211, 489 A.2d 918 (1985); Glad v. State Farm Mutual Auto Insurance Company, 336 Pa. Super. 196, 485 A.2d 499 (1984); Lias v. Erie Insurance Group, 30 D. & C.3d 441 (1982); and cases cited therein, dealing with the issue of causal connection between automobile and injury and whether a particular injury resulted from maintenance or use of a vehicle so as to activate the No-fault Act in the first instance.

In his opinion denying PNI's preliminary objections Judge Shaulis of this court determined that resolution of these section 204(a)(3) issues were governed by the criteria set forth in Utica Mutual Insurance Company v. Contrisciane, supra. In Contrisciane, the Pennsylvania Supreme Court de-

veloped criteria for determining whether a person is an "occupant" of a vehicle for the purpose of ascertaining existence of coverage under the uninsured motorist provisions of an insurance policy and under the Uninsured Motorist Act.

Although at first reading, Contrisciane appears to deal only with the "occupancy" issue, and not with the "involvement" requirement of section 204(a)(3), an examination of the four criteria developed by the Contrisciane court reveals that the first of those criteria, is, in fact, a "causal relationship" or "involvement" test. The first of the Contrisciane criteria is that there must be a "causal relation or connection between the injury and the use of the insured vehicle." Application of the Contrisciane criteria, therefore, will automatically require the court to determine whether the facts show a sufficient causal relationship between the injury and the vehicle, the resolution of which will also be determinative of "involvement" under section 204(a)(3).

The Contrisciane occupancy criteria have been applied to later no-fault cases, see Employer's Insurance of Wausau v. Nationwide Mutual Automobile Insurance Company, 34 D. & C.3d 35 (1985) and Porter, et al v. CNA Insurance Company, et al, 14 Philadelphia L.R. 276 (1986), and of course, most importantly were adopted and applied by this court in disposing of PNI's preliminary objections. The Contrisciane "occupancy" criteria, therefore, will be used to analyze the issue now before us.

Under Contrisciane, one is an occupant if:

"(1) There is a causal relation or connection between the injury and the use of the insured vehicle;

(2) The person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) The person must be vehicle-oriented rather than highway- or sidewalk-oriented at the time; and

(4) The person must also be engaged in a transaction essential to the use of the vehicle at the time."

With respect to the first criterion, we must conclude that the necessary causal relationship is present. In Contrisciane, the driver had exited his vehicle and had walked approximately 97 feet to a police officer's vehicle when he was struck and killed by the passing automobile. Despite the fact that it was not the victim's automobile itself that had physically caused the injury, the Contrisciane court nevertheless found the requisite causal relationship or connection between the injury and the use of the insured vehicle. Likewise, in his opinion overrruling PNI's preliminary objections in this case, Judge Shaulis found that the complaint alleged the necessary causal relationship between the injury and the use of the Peracchio vehicle, even though it was not the Peracchio vehicle that struck plaintiff.

We have read and considered Glad v. State Farm Mutual Auto Insurance Company, 336 Pa. Super. 196, 485 A.2d 499 (1984), in which the Superior Court stated "that the automobile itself, not some external force, must be the instrumentality used to cause the injury in no-fault cases." In Glad, supra, and supporting cases cited therein, however, the injuries were caused by an instrumentality unrelated to the operation of any motor vehicle. In the instant case, the plaintiff's injuries were caused by a motor vehicle, a factor that the Glad court deemed important. (See discussion of Eichelberger v. Warner, 290 Pa. Super. 269, 434 A.2d 747 (1981) contained in the opinion of Glad, supra.) The tow truck had stopped to help free the Peracchio vehicle. Peracchio was still in her vehicle. Plaintiff and Baker were still at the scene discussing how the vehi-

cle could best be dislodged. The connection between the injury and the Peracchio vehicle was more than mere chance or happenstance. See Varner v. Nationwide Mutual Insurance Company, supra. Compare Howe v. Harleysville Insurance Companies, 313 Pa. Super. 65, 459 A.2d 412 (1983).

Most importantly, however, Contrisciane, supra, was decided subsequent to Glad, supra, and dictates a broader definition of instrumentality and of the relationship between the subject vehicle and the injury. The Contrisciane criteria were applied to the instant factual situation in Judge Shaulis' opinion disposing of PNI's preliminary objections. Given Contrisciane and Judge Shaulis' adoption of the Contrisciane criteria to the instant case, we conclude that the record shows the requisite causal connection between plaintiff's injury and the Peracchio vehicle.

The second criterion of "close geographic proximity" is also met in this case. Viewing the record in the light most favorable to PNI, plaintiff was standing, at the most, 10 feet behind the Peracchio vehicle.

The third test specified in Contrisciane is that the person must be vehicle-oriented rather than highway- or sidewalk-oriented.

We have been referred to the Erie County case of Employer's Insurance of Wausau v. Nationwide Mutual Automobile Insurance Company, supra, in which a vehicle became lodged in a snowbank. The operator exited the vehicle uninjured and began walking down a road intending to seek assistance. Approximately one-tenth of a mile from the vehicle, the victim was struck by a passing automobile. The Erie County court applied the Contrisciane criteria and concluded that the victim was not an occupant

at the time of impact, holding that none of the criteria had been met.

The Wausau case must be compared with Contrisciane, where the operator was 97 feet away from his vehicle talking to the police officer. The instant case falls somewhere in between. In the instant case, plaintiff was still in close geographic proximity to the vehicle, and had not yet abandoned the vehicle and begun a search for assistance. The tow truck had just returned and was to provide help.

Analogizing with the factual situation and reasoning of the Supreme Court in Contrisciane, we are compelled to find in the instant case that plaintiff was still vehicle-oriented at the time of impact.

Finally, we conclude that at the time of impact, plaintiff was engaged in a transaction essential to the use of the vehicle at the time. At the time of impact, plaintiff and Baker had temporarily suspended their actual physical efforts to free the Peracchio vehicle, but were still standing in close proximity to the vehicle, trying to decide what action next to pursue, when the tow truck returned. The *transaction* was freeing the car from the snowbank. Plaintiff was still engaged in that *transaction* when struck by the Kirmeyer vehicle.

Summary judgment should only be entered if the pleadings, depositions, answers to interrogatories and admisssions on file, together with affidavits, if any, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Community Medical Services v. Local 2665, American Federation of State, County and Municipal Employees, AFL-CIO, 292 Pa. Super. 238, 437 A.2d 23 (1981). Furthermore, summary judgment is only proper in cases that are clear and free from doubt as to the existence of a disputed factual question. In disposing

of such a motion the court's function is not to decide issues of fact, but solely to determine whether there are material issues of fact to be decided. Id.

Any doubt must be resolved against the moving party. Thorsen v. Iron & Glass Bank, 328 Pa. Super. 135, 476 A.2d 928 (1984). Since credibility is a matter exclusively for a jury, summary judgment can not be granted where it requires the acceptance of testimony of a moving party's witness. Pennsylvania Gas & Water Co. v. Nenna & Frain, Inc., 320 Pa. Super. 291, 467 A.2d 330 (1983). The burden is upon the party moving for summary judgment to demonstrate clearly that there is no genuine issue of material fact. Day v. Volkeswagenwerk, 318 Pa. Super. 225, 464 A.2d 1313 (1983). The court must examine the record in the light most favorable to nonmoving party, and in so doing, all well-pleaded facts in the nonmoving party's pleadings are accepted as true and the nonmoving party is given the benefit of all reasonable inferences to be drawn therefrom Graf v. State Farm Insurance Co., 352 Pa. Super. 127, 507 A.2d 414 (1986); Spain v. Vincente, 315 Pa. Super. 135 461 A.2d 833 (1984).

Although in the instant case, some factual issues exist, resolution of those issues would not materially affect determination of the *occupant* issue. Under our analysis, when PNI is given the benefit of all reasonable inferences that could be drawn from the record, plaintiff's *occupancy* of the Peracchio vehicle for purposes of section 204 of the No-fault Act is nevertheless established.

Counsel for PNI points to factual issues regarding how long the parties attempted to dislodge the vehicle, the distance that plaintiff was from the Peracchio vehicle when he was struck by the Kirmeyer vehicle, the manner of the stopping of the Weaver tow truck, the location of the tow truck and

the movement of the tow truck at the time of impact.

The manner of the stopping of the tow truck, the location of the tow truck and the movement of the tow truck at the time of impact, although possibly relevant and material on the issue of negligence, are not material to the issue of whether plaintiff was an occupant of the Peracchio vehicle. The material fact is that the tow truck was there.

Although the questions of how long the parties spent attempting to free the Peracchio vehicle and the distance that plaintiff was from the Peracchio vehicle when struck, are material, if we view the depositions and record in the light most favorable to PNI, and give PNI the benefit of every reasonable inference therefrom, plaintiff was no more than 10 feet from the Peracchio vehicle, and plaintiff Baker and Peracchio had suspended their efforts to dislodge the vehicle for a period of a maximum one-half hour. In ruling on the summary-judgment motions, we have examined the record in the light most favorable to PNI and have resolved any doubt against the moving parties.

After examining the factual situation in Contrisciane, supra, and the Contrisciane court's application of its occupancy criteria to those facts, we must conclude in the instant case, that it is not material whether plaintiff was standing 10 feet or three feet behind the Peracchio vehicle and that it is not material whether plaintiff and Baker had suspended their physical efforts to free the vehicle for a period of 15 minutes or a half an hour.

We conclude that no genuine issue of material fact exists on the question of occupancy, and that viewing the record in the light most favorable to PNI, plaintiff was an *occupant* of the Peracchio vehicle at the time of impact. PNI, therefore, is liable

for payment of no-fault benefits under section 204(a)(3) of the No-fault Act.

On the liability issue, therefore, we will grant summary judgment in favor of plaintiff and against PNI, and will also grant Nationwide's motion.

Plaintiff also claims interest on overdue benefits at the rate of 18 percent per annum under the No-fault Act, §106(a)(2), 40 P.S. §1009.106(a)(2); and claims attorney's fees under §107(3), 40 P.S. §1009.107(3).

Section 106(a)(2) of the No-fault Act provides generally that no-fault benefits are overdue if not paid within 30 days after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained and that overdue payments bear interest at the rate of 18 percent per annum. Defendants have advanced no reason for denying interest on benefits that may be overdue in the instant case, and we will, therefore, direct PNI to pay the same.

With respect to the claim for attorney's fees, section 107(3) of the No-fault Act provides that if the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee.

We do not believe PNI's denial of the claim was without reasonable foundation in this case.

Despite the Supreme Court's decision in Contrisciane, supra, we can not say that application of the Contrisciane criteria to the facts of this case was so clear and unequivocal that PNI's denial was without reasonable foundation. We also can not say that the issue of vehicle "involvement" under section 204(a)(4) of the No-fault Act is so clear as to justify the imposition of attorney's fees upon PNI.

## ORDER

Now, this December 22, 1986, it is hereby ordered:

1. Plaintiff's motion for summary judgment is granted in part and denied in part as follows:

a. Summary judgment is granted in favor of plaintiff and against Pennsylvania National Mutual Casualty Insurance Company for payment of basic loss benefits to plaintiff pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act, together with interest on overdue benefits at the rate of 18 percent per annum pursuant to section 106(a)(2) of that act. If disputes exist over amount of basic loss benefits or interest payable to plaintiff, those disputed items shall be scheduled for trial sec reg. or other disposition by the court as may be agreed upon by the parties.

b. That portion of plaintiff's motion for summary judgment requesting an order for payment of attorney's fees is denied.

2. Defendant Nationwide Insurance Company's motion for summary judgment is granted and judgment is entered in favor of Nationwide Insurance Company.

3. Costs are imposed on defendant Pennsylvania National Mutual Casualty Insurance Company.